[No. S113725. June 27, 2005.]

DISCOVER BANK, Petitioner, v.
SUPERIOR COURT OF LOS ANGELES, Respondent;
CHRISTOPHER BOEHR, Real Party in Interest.

## COUNSEL

Kirkland & Ellis, Jeffrey S. Davidson, Rick Richmond, C. Robert Boldt, Amy M. Wilkins, Timothy B. Jafek; Stroock & Stroock & Lavan and Julia B. Strickland for Petitioner.

Morrison & Foerster and Maren E. Nelson for California Bankers Association as Amicus Curiae on behalf of Petitioner.

M. Jane Brady, Attorney General (Delaware); Severson & Werson and William L. Stern for Robert A. Glen, Delaware State Bank Commissioner as Amicus Curiae on behalf of Petitioner.

Rintala, Smoot, Jaenicke & Rees, G. Howden Fraser; Wilmer, Cutler & Pickering and Christopher R. Lipsett for American Bankers Association, American Financial Services Association and Consumer Bankers Association as Amici Curiae on behalf of Petitioner.

Gibson, Dunn & Crutcher, Mark E. Weber, Gabriel J. Pasette; Stokes Lawrence, Kelly T. Noonan and Bradford Axel for AT&T Wireless Services, Inc., as Amicus Curiae on behalf of Petitioner.

Littler Mendelson, Henry D. Lederman, Marissa M. Tirona and James Y. Wu for Ralphs Grocery Company as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Trial Lawyers for Public Justice, F. Paul Bland, Jr., Michael J. Quirk, Arthur H. Bryant, Leslie A. Bailey, Kate Gordon; Strange & Carpenter,

Brian R. Strange, Gretchen Carpenter; Law Offices of Barry Kramer and Barry L. Kramer for Real Party in Interest.

Bramson, Plutzik, Mahler & Birkhaeuser and Robert M. Bramson for National Association of Consumer Advocates as Amicus Curiae on behalf of Real Party in Interest.

Deborah M. Zuckerman, Michael R. Schuster; Kemnitzer, Anderson, Barron & Ogilvie and Mark F. Anderson for AARP as Amicus Curiae on behalf of Real Party in Interest.

The Sturdevant Law Firm, James C. Sturdevant; Ian Herzog; Michael Adler; Sharon J. Arkin; Stuart B. Esner; Brian S. Kabateck; David A. Rosen; Daniel U. Smith; Christine D. Spagnoli; Lea-Ann Tratten; Steven B. Stevens and Scott H. Z. Sumner for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

Ghalchi & Associates, Kamran Ghalchi; Ahdoot & Wolfson, Tina Wolfson and Robert Ahdoot for Rebecca Shakib and Karen Bernard as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**MORENO, J.**—This case concerns the validity of a provision in an arbitration agreement between Discover Bank and a credit cardholder forbidding classwide arbitration. The credit cardholder, a California resident, alleges that Discover Bank had a practice of representing to cardholders that late payment fees would not be assessed if payment was received by a certain date, whereas in actuality they were assessed if payment was received after 1:00 p.m. on that date, thereby leading to damages that were small as to individual consumers but large in the aggregate. Plaintiff filed a complaint claiming damages for this alleged deceptive practice, and Discover Bank successfully moved to compel arbitration pursuant to its arbitration agreement with plaintiff.

Plaintiff now seeks to pursue a classwide arbitration, which is well accepted under California law. (See *Keating v. Superior Court* (1982) 31 Cal.3d 584, 613–614 [183 Cal.Rptr. 360, 645 P.2d 1192] (*Keating*), overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852] (*Southland*).) But plaintiff's arbitration agreement with Discover Bank has a clause forbidding classwide arbitration. Moreover, the agreement has a Delaware choice-of-law provision. Discover Bank argues that Delaware law allows contracting parties to waive class action remedies.

The trial court ruled that the class arbitration waiver was unconscionable and enforced the arbitration agreement with the proviso that plaintiff could seek classwide arbitration. The Court of Appeal, without disputing that such class arbitration waivers may be unconscionable under California law and without addressing the choice-of-law issue, nonetheless held that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts the state law rule that class arbitration waivers are unconscionable.

As explained below, we conclude that, at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration. We further conclude that the Court of Appeal is incorrect that the FAA preempts California law in this respect. Finally, we will remand to the Court of Appeal to decide the choice-of-law issue.

## I. Factual and Procedural Background

The following undisputed facts are largely drawn from the Court of Appeal opinion. Plaintiff Christopher Boehr obtained a credit card from defendant Discover Bank in April 1986. The Discover Bank cardholder agreement (agreement) governing plaintiff's credit card account contained a choice-of-law clause providing for the application of Delaware and federal law.

When plaintiff's credit card was issued, the agreement did not contain an arbitration clause. Discover Bank subsequently added the arbitration clause in July 1999, pursuant to a change-of-terms provision in the agreement. Relying on the change-of-terms provision, Discover Bank added the arbitration clause by sending to its existing cardholders (including plaintiff) a notice that stated in relevant part: "NOTICE OF AMENDMENT . . . WE ARE ADDING A NEW ARBITRATION SECTION WHICH PROVIDES THAT IN THE EVENT YOU OR WE ELECT TO RESOLVE ANY CLAIM OR DISPUTE BETWEEN US BY ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. THIS ARBITRATION SECTION WILL NOT APPLY TO LAWSUITS FILED BEFORE THE EFFECTIVE DATE."

In addition, the arbitration clause precluded both sides from participating in classwide arbitration, consolidating claims, or arbitrating claims as a representative or in a private attorney general capacity: ". . . NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR ARBITRATE ANY CLAIM AS A

REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY."

The arbitration agreement also stated that the FAA would govern the agreement: "Your Account involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act (FAA)." "The arbitrator shall follow applicable substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law." Existing cardholders were notified that if they did not wish to accept the new arbitration clause, they must notify Discover Bank of their objections and cease using their accounts. Their continued use of an account would be deemed to constitute acceptance of the new terms. Plaintiff did not notify Discover Bank of any objection to the arbitration clause or cease using his account before the stated deadline.

On August 15, 2001, Boehr filed a putative class action complaint in superior court against Discover Bank. Plaintiff alleged two causes of action— breach of contract and violation of the Delaware Consumer Fraud Act (Del. Code Ann., tit. 6, §§ 2511–2527). The latter act in part prohibits misrepresentations "of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale, lease or advertisement of any merchandise." (*Id.*, § 2513.) He alleged that Discover Bank breached its cardholder agreement by imposing a late fee of approximately $29 on payments that were received on the payment due date, but after Discover Bank's undisclosed 1:00 p.m. "cut-off time." Discover Bank also allegedly imposed a periodic finance charge (thereby disallowing a grace period) on new purchases when payments were received on the payment due date, but after 1:00 p.m. The complaint acknowledged that the contract with Discover Bank provided that the contract was "governed by federal law and the law of Delaware." Plaintiff alleged, however, that "this choice of law provision applies only to plaintiff's substantive claims and not to other issues related to the contract, which plaintiff contends are governed by California or other applicable law."

Discover Bank moved to compel arbitration of plaintiff's claim on an individual basis and to dismiss the class action pursuant to the arbitration agreement's class action waiver.

Plaintiff opposed the motion, contending among other things that the class action waiver was unconscionable and unenforceable under California law.[1]

---

[1] Plaintiff also contended below that the unilateral addition of the arbitration clause was unconscionable under California law. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779 [79 Cal.Rptr.2d 273].) That contention was rejected by the trial court and the Court of Appeal, and the issue was not raised in the petition for review. Accordingly, we do not address

Discover Bank, on the other hand, argued that the FAA requires the enforcement of the express provisions of an arbitration clause, including class action waivers. Discover Bank contended that under section 2 of the FAA, arbitration agreements should not be singled out for suspect status under state laws applicable only to arbitration provisions.

The trial court initially granted Discover Bank's motion in its entirety under Delaware law. After Discover Bank's motion to compel arbitration was granted, the Fourth District Court of Appeal decided *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr.2d 862] (*Szetela*), which held, for reasons explained below, that a virtually identical class action waiver was unconscionable. Plaintiff, citing *Szetela*, moved for reconsideration of that portion of the order enforcing the class action waiver.

The lower court found *Szetela* constituted new and controlling authority for the proposition that, under California law, an arbitration class action waiver is unconscionable and, thus, unenforceable. The trial court further conducted a choice-of-law analysis and concluded that enforcing the class action waiver under Delaware law would violate a fundamental public policy under California law as articulated in *Szetela*. Upon determining it would be proper to sever the class action waiver clause from the rest of the arbitration agreement, the trial court struck the class action waiver clause from the agreement, ordered plaintiff to arbitrate his claims individually, and left open the possibility that plaintiff may succeed in certifying an arbitration class under California law.

After the lower court granted plaintiff's motion for reconsideration, Discover Bank filed a writ petition seeking reinstatement of the lower court's original order enforcing the arbitration clause in its entirety by compelling plaintiff to arbitrate on an individual basis and precluding him from participating in class litigation or class arbitration. The Court of Appeal issued an order to show cause.

The Court of Appeal granted Discover Bank's writ. It did not take issue with the premise that class action waivers are unenforceable, at least under some circumstances, under California law and that this rule could override the Delaware choice-of-law provision. But the Court of Appeal held, for reasons elaborated below, that any California rule prohibiting class action waivers was preempted by the FAA, and that *Szetela* had failed to adequately analyze the federal preemption issue. It therefore upheld the Discover Bank class action waiver. We granted review.

the issue and omit most of the discussion of the proceedings pertaining to the issue in the courts below from our statement of facts.

## II. DISCUSSION

### A. Class Action Lawsuits and Class Action Arbitration

Before addressing the questions at issue in this case, we first consider the justifications for class action lawsuits. These justifications were set forth in Justice Mosk's oft-quoted majority opinion in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*): "Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial."

We quoted much of the above language with approval almost 30 years later in *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 445 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*). We also quoted with approval Justice Tobriner's concurring opinion in *Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 387 [134 Cal.Rptr. 393, 556 P.2d 755]. In the latter case, this court rejected a class action certification against a trading stamp company that allegedly had collected excess taxes, but had given over the excess tax collected to the public treasury and had discontinued the practice before the suit was filed. "Although the majority in *Blue Chip Stamps* placed utmost significance on the small amount of potential individual recovery (18 Cal.3d at pp. 385–386), Justice Tobriner's separate opinion effectively clarified that trial courts remain under the obligation to consider 'the role of the class action in deterring and redressing wrongdoing.' (18 Cal.3d at p. 387 (conc. opn. of Tobriner, J.).) Invoking settled principles, Justice Tobriner emphasized: 'A company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation. [Citations.] The problems which arise in the management of a class action involving numerous small claims do not justify a judicial policy that would permit the defendant to retain the benefits of its wrongful conduct and to continue that conduct with impunity.' " (*Linder, supra,* 23 Cal.4th at pp. 445–446.)

These same concerns were acknowledged by the United States Supreme Court: " 'The policy at the very core of the class action mechanism is to

overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.' " (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 617 [138 L.Ed.2d 689, 117 S.Ct. 2231].)

It is this important role of class action remedies in California law that led this court to devise the hybrid procedure of classwide arbitration in *Keating*, *supra*, 31 Cal.3d 584. In that case, plaintiff 7-Eleven franchisors sought to invalidate an arbitration agreement between them and Southland Corporation and proceed with class action litigation to redress Southland's alleged systemic misconduct. This court held that the arbitration agreement was enforceable for most of the claims. In considering the impact that enforcement of the arbitration agreement would have on class action claims, the *Keating* court stated: "This court has repeatedly emphasized the importance of the class action device for vindicating rights asserted by large groups of persons. We have observed that the class suit ' "both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation. [Citation.]" ' [Citation.] Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to 'retain[] the benefits of its wrongful conduct.' [Citation.] [Moreover,] '[c]ontroversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party.' " (*Keating*, *supra*, 31 Cal.3d at p. 609, fn. omitted.)

The *Keating* court recognized that "[w]ithout doubt a judicially ordered classwide arbitration would entail a greater degree of judicial involvement than is normally associated with arbitration, ideally ' "a complete proceeding, without resort to court facilities." ' [Citation.] The court would have to make initial determinations regarding certification and notice to the class, and if classwide arbitration proceeds it may be called upon to exercise a measure of external supervision in order to safeguard the rights of absent class members to adequate representation and in the event of dismissal or settlement. A good deal of care, and ingenuity, would be required to avoid judicial intrusion upon the merits of the dispute, or upon the conduct of the proceedings themselves and to minimize complexity, costs, or delay. [Citation.] [¶] An adhesion contract is not a normal arbitration setting, however, and what is at stake is not some abstract institutional interest but the interests of the affected parties." (*Keating*, *supra*, 31 Cal.3d at p. 613.) *Keating*'s endorsement of classwide arbitration has been echoed by subsequent Court of Appeal decisions. (See, e.g., *Sanders v. Kinko's, Inc.* (2002) 99 Cal.App.4th 1106 [121

Cal.Rptr.2d 766]; *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42 [78 Cal.Rptr.2d 779].)

B. *The Enforceability of Class Action Waivers*

*Keating* judicially authorized classwide arbitration in a case in which the arbitration agreement at issue was silent on the matter. It did not answer directly the question whether a class action waiver may be unenforceable as contrary to public policy or unconscionable. Recent cases have addressed that question. First, the Court of Appeal discussed the validity of a contractual class action waiver outside the arbitration context in *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 [108 Cal.Rptr.2d 699] (*America Online*). Several former AOL subscribers alleged that AOL had continued to debit their credit cards for monthly service fees after their subscriptions had been canceled. (*Id.* at p. 5.) The plaintiffs filed a class action lawsuit alleging violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), the Unfair Business Practices Act and several common law causes of action. The subscription contracts contained Virginia forum selection and choice-of-law provisions. Because Virginia law did not permit consumer class action lawsuits, those provisions were the "functional equivalent" of a waiver of class action lawsuits. (90 Cal.App.4th at p. 5.)

The *America Online* court held the forum selection and choice-of-law provisions to be unenforceable. As to the latter, the court stated: " 'While "California does not have any public policy against a choice of law provision, where it is otherwise appropriate" [citation] and "choice of law provisions are usually respected by California courts . . ." [citation] "an agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy . . . [or] 'result in an evasion of . . . a statute of the forum protecting its citizens.' " [Citation.]' " (*America Online, supra,* 90 Cal.App.4th at p. 13, quoting *Hall v. Superior Court* (1983) 150 Cal.App.3d 411, 416–417 [197 Cal.Rptr. 757]; see also *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 466 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*) [an arm's length choice-of-law provision between commercial entities will not be enforced if it violates a fundamental California public policy and California has materially greater interests than the chosen state].)

The *America Online* court found in the CLRA a statute that overrode the choice-of-law provision. The court noted that the statute contained an anti-waiver provision, Civil Code section 1751, which states: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." The court reasoned that following Virginia law would result in a waiver of the CLRA in light of the fact that the equivalent Virginia consumer protection statute, the Virginia Consumer Protection Act of

1977 (Va. Code Ann., § 59.1-196), was significantly weaker. (*America Online*, *supra*, 90 Cal.App.4th at pp. 15–16.) Among the most important differences between the two statutes was the lack of a provision permitting class action relief in the Virginia statute. (*Id.* at p. 17.) After quoting the passage in *Vasquez*, *supra*, 4 Cal.3d at page 808, regarding the importance of class actions in vindicating consumer rights quoted above (*ante*, at p. 156), the court stated: "That this view has endured over the last 30 years is of little surprise given the importance class action consumer litigation has come to play in this state. In light of that history, we cannot accept AOL's assertion that the elimination of class actions for consumer remedies if the forum selection clause is enforced is a matter of insubstantial moment. The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the . . . forum selection clause." (*America Online*, *supra*, 90 Cal.App.4th at pp. 17–18, fn. omitted.)

In *Szetela*, *supra*, 97 Cal.App.4th at page 1097, the court considered a class arbitration waiver. Plaintiff was a member of a class of credit cardholders seeking action against Discover Bank for improperly charging fees for exceeding their credit limits and imposing other penalties. He sued for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent or negligent misrepresentation, and deceptive business practices. The arbitration clause and class arbitration waiver were very similar to those at issue in the present case. The trial court granted Discover Bank's motion for arbitration. Plaintiff recovered $29 in an individual arbitration and then appealed the trial court order compelling arbitration.

The court held that the class arbitration waiver was unenforceable. It first recognized that unconscionability was one reason to refuse to enforce an arbitration waiver. (*Szetela*, *supra*, 97 Cal.App.4th at p. 1099.) It found procedural unconscionability in the adhesive nature of the contract. (*Id.* at p. 1100.) The court also found substantive unconscionability in the imposition of a one-sided and oppressive class action waiver provision. "This provision is clearly meant to prevent customers, such as Szetela and those he seeks to represent, from seeking redress for relatively small amounts of money, such as the $29 sought by Szetela. Fully aware that few customers will go to the time and trouble of suing in small claims court, Discover has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights. [¶] . . . The clause is not only harsh and unfair to Discover customers who might be owed a relatively small sum of money, but it also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, Discover has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that any remedies obtained

will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored. Therefore, the provision violates fundamental notions of fairness. [¶] . . . This is not only substantively unconscionable, it violates public policy by granting Discover a 'get out of jail free' card while compromising important consumer rights." (*Szetela, supra,* 97 Cal.App.4th at p. 1101; see also *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1151 [concluding class action waivers in CLRA claim violated California law, relying in part on *Szetela*]; *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1176 [same].)

Turning to the present case, we note that plaintiff does not plead a CLRA cause of action and so does not invoke its antiwaiver provision;[2] nor does he seek recovery under any other California statute as to which a class action remedy is essential. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100–101 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) Rather, plaintiff contends that class action or arbitration waivers in consumer contracts, and in this particular contract, should be invalidated as unconscionable under California law.

■ "To briefly recapitulate the principles of unconscionability, the doctrine has ' "both a 'procedural' and a 'substantive' element," the former focusing on " 'oppression' " or " 'surprise' " due to unequal bargaining power, the latter on " 'overly harsh' " 'or " 'one-sided' " results.' [Citation.] The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' . . . [¶] Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*), cert. den. *sub nom. Auto Stiegler, Inc. v. Little* (2003) 540 U.S. 818 [157 L.Ed.2d 35, 124 S.Ct. 83].)

We agree that at least some class action waivers in consumer contracts are unconscionable under California law. First, when a consumer is given an amendment to its cardholder agreement in the form of a "bill stuffer" that he would be deemed to accept if he did not close his account, an element of procedural unconscionability is present. (*Szetela, supra,* 97 Cal.App.4th at p. 1100.) Moreover, although adhesive contracts are generally enforced (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817–818 [171 Cal.Rptr.

---

[2] Plaintiff's counsel clarified at oral argument that plaintiff did not plead a CLRA cause of action because he would be ultimately seeking to certify a national class, and therefore did not wish to rely on a California statute.

604, 623 P.2d 165]), class action waivers found in such contracts may also be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy. As stated in Civil Code section 1668: "All contracts *which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Italics added.)

■ Class action and arbitration waivers are not, in the abstract, exculpatory clauses. But because, as discussed above, damages in consumer cases are often small and because " '[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit' " (*Linder, supra,* 23 Cal.4th at p. 446), " 'the class action is often the only effective way to halt and redress such exploitation.' " (*Ibid.*) Moreover, such class action or arbitration waivers are indisputably one-sided. "Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover [Bank], because credit card companies typically do not sue their customers in class action lawsuits." (*Szetela, supra,* 97 Cal.App.4th at p. 1101.) Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable.

We acknowledge that other courts disagree. Some courts have viewed class actions or arbitrations as a merely procedural right, the waiver of which is not unconscionable. (See, e.g., *Strand v. U.S. Bank National Association ND* (2005) 2005 ND 68 [693 N.W.2d 918, 926] (*Strand*); *Blaz v. Belfer* (5th Cir. 2004) 368 F.3d 501, 504–505; *Johnson v. West Suburban Bank* (3d Cir. 2000) 225 F.3d 366, 369; *Champ v. Siegel Trading Co., Inc.* (7th Cir. 1995) 55 F.3d 269, 277; but see *Leonard v. Terminex Intern. Co. L.P.* (Ala. 2002) 854 So.2d 529, 538 [class action waiver together with limitation of damages clause in adhesive consumer arbitration agreement deprives plaintiffs of a "meaningful remedy" and is therefore unconscionable]; *State v. Berger* (2002) 211 W.Va. 549 [567 S.E.2d 265, 278] [holding contract provision limiting class action rights unconscionable]; *Powertel v. Bexley* (Fla.Dist.Ct.App. 1999) 743 So.2d 570, 576 [same].) But as the above cited cases of this court have continually affirmed, class actions and arbitrations are, particularly in the consumer context, often inextricably linked to the vindication of substantive rights. Affixing the "procedural" label on such devices understates their importance and is not helpful in resolving the unconscionability issue.[3]

---

[3] Discover Bank argues that *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual Bank*) supports the conclusion

Nor are we persuaded by the rationale stated by some courts that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers. (*Strand, supra,* 693 N.W.2d at p. 926; *Snowden v. Checkpoint Check Cashing* (4th Cir. 2002) 290 F.3d 631, 638.) There is no indication other than these courts' unsupported assertions that, in the case of small individual recovery, attorney fees are an adequate substitute for the class action or arbitration mechanism. Nor do we agree with the concurring and dissenting opinion that small claims litigation, government prosecution, or informal resolution are adequate substitutes.

■ We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with

that class actions are a mere procedural device the waiver of which is not substantively unconscionable. We disagree. No class action waiver was at issue in *Washington Mutual Bank.* Rather, the case involved an attempt to certify a nationwide class action suit in which the defendant mortgage lender had entered into agreements with class members providing that the agreement would be governed by the law of the jurisdiction in which the property was located. Because class action proponents have the burden of demonstrating a predominance of common issues, we held that the proponent must demonstrate that the variations in state law incorporated into prospective class members' contracts "will not swamp common issues and defeat predominance." (*Washington Mutual Bank, supra,* 24 Cal.4th at p. 926.) In arriving at that holding, we rejected "the Court of Appeal's suggestion that California businesses dealing with mass groups of consumers should not be permitted to rely on choice-of-law clauses as a means of avoiding involvement in a nationwide class action." (*Id.* at p. 918.) As we stated: " 'Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going.' [Citations.] Consequently, an otherwise enforceable choice-of-law agreement may not be disregarded merely because it may hinder the prosecution of a multistate or nationwide class action or result in the exclusion of nonresident consumers from a California-based class action." (*Ibid.*)

Our conclusion that the defendant was not precluded from varying the state law that would control its agreements "merely because it may hinder the prosecution of a multistate or nationwide class action" is a long way from categorically approving class action waivers. It is one thing to hold that class action waivers are unenforceable under certain circumstances, and quite another to require companies to structure their agreements so as to optimize the chance that those who litigate against them will be able to obtain nationwide class certification. Moreover, the *Washington Mutual Bank* court did not foreclose the possibility of class certification in the case before it. Nor did it express any views on the choice-of-law provision before it, affirming the conclusion of Restatement Second of Conflict of Laws, section 187, comment b, that in the case of contracts of adhesion " 'the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.' " (*Washington Mutual Bank, supra,* 24 Cal.4th at p. 918, fn. 6.) Nothing in *Washington Mutual Bank* can be interpreted to suggest a view, one way or the other, on the enforceability of class action waivers in contracts of adhesion.

the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

## C. *FAA Preemption of California Rules Against Class Action Waivers*

### 1. *The Court of Appeal Opinion*

The Court of Appeal did not dispute the conclusions of *America Online* and *Szetela* that, at least under some circumstances, a class action waiver would be unconscionable or contrary to public policy. The court concluded, however, that when class action waivers are contained in arbitration agreements, California law prohibiting such waivers is preempted by section 2 of the FAA (9 U.S.C. § 2). We conclude the Court of Appeal erred.

█ We begin by reviewing some basic principles pertaining to the enforcement of arbitration agreements. "California law, like federal law, favors enforcement of valid arbitration agreements. [Citation.] . . . . Thus, under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (*Armendariz, supra,* 24 Cal.4th at pp. 97–98, fn. omitted; see also 9 U.S.C. § 2; Code Civ. Proc., § 1281.) In other words, although under federal and California law, arbitration agreements are enforced "in accordance with their terms" (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*)), such enforcement is limited by certain general contract principles " 'at law or in equity for the revocation of any contract.' " (*Id.* at p. 474.)

At the outset of our discussion, we note that the FAA is silent on the matter of class actions and class action arbitration. Indeed, not only is classwide arbitration a relatively recent development, but class action litigation for damages was for the most part unknown in federal jurisdictions at the time the FAA was enacted in 1925. (Act of Feb. 12, 1925, ch. 213, 43 Stat. 883.)[4]

---

[4] "It was not until the promulgation of the original Rule 23 and the first Federal Rules of Civil Procedure in 1938 that law and equity were merged and class suits for damages in the United States first became available." (1 Conte & Newberg, Newberg on Class Actions (4th ed. 2002) § 1:9, p. 32.) Even under the original rule 23, class actions did not come into their own. "[M]odern class action practice emerged in the 1966 revision of Rule 23." (*Ortiz v. Fibreboard Corp.* (1999) 527 U.S. 815, 833 [144 L.Ed.2d 715, 119 S.Ct. 2295].) This revision gave class

The Congress that enacted the FAA therefore cannot be said to have contemplated the issues before us. Accordingly, our conclusions with respect to FAA preemption must come from the United States Supreme Court's articulation of general principles regarding such preemption.

In support of its conclusion, the Court of Appeal cited *Perry v. Thomas* (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520] (*Perry*), in which the United States Supreme Court concluded that section 2 of the FAA preempted California Labor Code section 229, which authorizes an action for the collection of wages " 'without regard to the existence of any private agreement to arbitrate.' " (*Perry, supra,* 482 U.S. at p. 484.) As *Perry* stated, the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. Its general applicability reflects that '[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered . . . .' . . . This clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way." (*Perry, supra,* 482 U.S. at pp. 490–491.)

The Court of Appeal observed that the court in *Perry* did not address whether the contract was unconscionable, because this issue had not been addressed in the lower courts. But while noting that the issue may be considered on remand, the *Perry* court clarified the limits the FAA imposed on the unconscionability defense: "We note . . . the choice-of-law issue that arises when defenses such as [plaintiff's] so-called 'standing' and unconscionability arguments are asserted. In instances such as these, the text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law [citation], 'save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2 . . . . Thus state law, whether of legislative or judicial origin, is applicable *if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally*. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [Citations.] A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a

actions their "current shape," in part by authorizing "class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." (*Amchem Products, Inc. v. Windsor, supra,* 521 U.S. at pp. 613–614.)

manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." (*Perry*, *supra*, 482 U.S. at pp. 492–493, fn. 9, italics omitted and added.) The Court of Appeal quoted the above language and also noted similar reasoning in the seminal case of *Southland*, *supra*, 465 U.S. at page 16, in which the Supreme Court held that a California statute prohibiting arbitration of certain claims under the Franchise Investment Law was preempted by the FAA.[5]

Based on the above, the Court of Appeal concluded: "While a state may prohibit the contractual waiver of statutory consumer remedies, including the right to seek relief in a class action, such protections fall by the wayside when the waiver is contained in a validly formed arbitration agreement governed by the FAA. The antiwaiver provisions in statutes such as section 229 of the Labor Code . . . are preempted by section 2 of the FAA. Similarly, we conclude the antiwaiver language found in judicial decisions such as [*America Online*] and *Szetela* also has been preempted by section 2 of the FAA."

■ The Court of Appeal's conclusion is puzzling, because it ignores the critical distinction made by the *Perry* court between a "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue," which is preempted by section 2 of the FAA, and a state law that "govern[s] issues concerning the validity, revocability, and enforceability of contracts generally," which is not. (*Perry*, *supra*, 482 U.S. at p. 493, fn. 9.) "[U]nder section 2 of the FAA, a state court may refuse to enforce an arbitration agreement based on 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*Little*, *supra*, 29 Cal.4th at p. 1079, quoting *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652].) In the present case, the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally. In other words, it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such

---

[5] We note that although the *Southland* court overruled the portion of our *Keating* decision holding that the statute was not preempted by the FAA, it expressly declined to rule on the portion of the *Keating* decision regarding classwide arbitrations, concluding the issue had not been properly raised below. (*Southland*, *supra*, 465 U.S. at p. 17.)

agreements. (See *America Online, supra*, 90 Cal.App.4th at pp. 17–18.) In that important respect it differs from the provision under consideration in *Perry*, which singled out certain arbitration agreements as unenforceable.

The Court of Appeal also relied on statements found in *Volt, supra*, 489 U.S. 468. In *Volt*, the parties agreed to arbitrate under California law, which permitted a stay of arbitration proceeding while litigation was pending. (See Code Civ. Proc., § 1281.2, subd. (c).) Such a stay would not have been allowed under the relevant parts of the FAA. (9 U.S.C. §§ 3, 4; *Volt, supra*, 489 U.S. at pp. 471–472 & fn. 2.) The *Volt* court rejected the federal preemption argument and affirmed the parties' right to structure their arbitration agreement according to California rules. It stated, in a passage quoted by the Court of Appeal below, that the FAA's "primary purpose [is to] [e]nsure that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be conducted." (*Volt, supra*, 489 U.S. at p. 479.)

The Court of Appeal in the present case concluded that, unlike in *Volt*, the imposition of class action arbitration despite a class action waiver in the arbitration agreement would defeat the purpose of the FAA because it would not be enforcing the arbitration agreement according to its terms. We disagree. *Volt*'s dictum that the primary purpose of the FAA is to "ensur[e] that private agreements to arbitrate are enforced according to their terms" (*Volt, supra*, 489 U.S. at p. 479) was intended to explain why the procedural rules provided in arbitration agreements should be enforced, rather than imposing the rules contained in the FAA. (*Volt, supra*, at pp. 478–479.) Nothing in *Volt*, nor any other Supreme Court case, however, suggests that state courts are obliged to enforce contractual terms even if those terms are found to be unconscionable or contrary to public policy under general contract law principles. As discussed, section 2 of the FAA and cases interpreting it make clear that state courts have no such obligation. Agreements to arbitrate may not be used to "harbor terms, conditions and practices" that undermine public policy. (*Little, supra*, 29 Cal.4th at p. 1079.)

Discover Bank cites various cases holding that the requirement of section 4 of the FAA, that federal district courts petitioned to compel arbitration will do so "in accordance with the terms of the agreement," precludes class action arbitration when the agreement does not provide for it. (See, e.g., *Champ v. Siegel Trading Co., Inc., supra*, 55 F.3d 269, 277.) But as we have recognized, section 4 does not apply to state court proceedings. (*Cronus Investments, Inc. v. Concierge Services, LLC* (2005) 35 Cal.4th 376, 388–389 [25

Cal.Rptr.3d 540, 107 P.3d 217]; see *Blue Cross of California v. Superior Court, supra,* 67 Cal.App.4th 42, 62–64 [concluding that neither § 4 nor any other part of the FAA precludes classwide arbitration].) Aside from that, there is no suggestion that the quoted language in section 4 overrides the principle embodied in section 2 that state courts can refuse to enforce arbitration agreements or portions thereof based on general contract principles. As discussed, the FAA does not federalize the law of unconscionability or related contract defenses except to the extent that it forbids the use of such defenses to discriminate against arbitration clauses. (See *Perry, supra,* 482 U.S. at p. 493, fn. 9.) There is no such discrimination here with respect to California's rule against class action waivers.

The Court of Appeal opinion below also relied on the supposed shortcomings of arbitration to bolster its conclusion that a class action waiver is enforceable under the FAA. As the court stated: "Although California courts have recognized the consumer protection value of classwide arbitration, that is not the sole consideration. Courts should also consider the 'California rule which prevents reweighing the merits of an arbitrator's decision.' [Citation.] The FAA does not preempt this rule. [Citation.] As judicial review of the merits of an arbitrator's decision may not be had under California law, a multi-million dollar class arbitration award entered on nothing more than mere whim cannot be corrected under California law."

Far from holding that the invalidation of a class action waiver discriminates against arbitration, the Court of Appeal below reasoned in effect that arbitration is an inferior forum and therefore cannot be entrusted with classwide claims. The court's conclusion regarding the unsuitability of arbitration to class actions reflects, as we stated in the context of another proposed limitation on arbitration, "the very mistrust of arbitration that has been repudiated by the United States Supreme Court." (*Armendariz, supra,* 24 Cal.4th at p. 120.) Moreover, as explained below, there is nothing to indicate that class action and arbitration are inherently incompatible.

## 2. *Gilmer v. Interstate/Johnson Lane Corp.*

Discover Bank and its amici curiae also argue that their position on FAA preemption is supported by language in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [114 L.Ed.2d 26, 111 S.Ct. 1647] (*Gilmer*). In that case, the court considered whether the Age Discrimination in Employment Act of 1967 (ADEA; 29 U.S.C. § 621 et seq.) precluded arbitration of claims brought under that act. The court made clear that the inquiry was into congressional intent to preclude arbitration, discoverable through the language, legislative history, or through "an 'inherent conflict' between arbitration and the ADEA's underlying purposes." (*Gilmer, supra,* 500 U.S. at p. 26.) The *Gilmer* court

rejected the argument that there was such an inherent conflict because of the supposed lack of collective action mechanisms in the New York Stock Exchange arbitration rules under which the plaintiff's arbitration was being conducted. As the court stated: "The NYSE rules . . . provide for collective proceedings. [Citation.] But 'even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.' " (*Gilmer*, *supra*, 500 U.S. at p. 32.)

The above passage does not support Discover Bank's position. At most, the *Gilmer* court can be understood to mean that a party can still vindicate his or her rights under the ADEA even if no class action remedy is available. The ADEA is an employment discrimination statute in which large individual awards are commonplace. (See Carnahan, *Removing the Scarlet A* (Aug. 12, 2002) Forbes, at p. 78 [reporting that the median award in employee age discrimination suits is $269,000].) Under California law, classwide arbitration is only justified when "gross unfairness would result from the denial of opportunity to proceed on a classwide basis." (*Keating*, *supra*, 31 Cal.3d at p. 613.)

Moreover, in *Gilmer* the plaintiff sought to use the supposed lack of a class action remedy as a reason for invalidating the entire arbitration agreement. In the present case, the enforceability of the arbitration agreement itself is not in question, only enforcement of the class action waiver. *Gilmer*'s determination that the lack of class action remedies does not give rise to an inherent conflict between the ADEA and the FAA does not lend support to the proposition that the FAA categorically precludes states from enforcing arbitration-neutral rules that prohibit consumer class action waivers in some circumstances.[6]

---

[6] Several federal cases, relying in part on *Gilmer*, have held that enforcement of arbitration clauses prohibiting class actions did not inherently conflict with the federal Truth in Lending Act (TILA; 15 U.S.C. § 1601 et seq.) (See *Snowden v. Checkpoint Check Cashing*, *supra*, 290 F.3d at pp. 638–639; *Randolph v. Green Tree Fin. Corp.* (11th Cir. 2001) 244 F.3d 814, 818 (*Randolph*); *Johnson v. West Suburban Bank*, *supra*, 225 F.3d at p. 369.) These courts reasoned, inter alia, that even without class actions, "the statute contains other incentives statutory damages and attorneys fees for bringing TILA claims." (*Randolph*, *supra*, at p. 818; see 15 U.S.C. § 1640(a)(2)(A) [providing $100 minimum statutory damages for TILA violations].) These decisions, which address whether a federal statute impliedly limits arbitration, are obviously not binding on this court when it decides whether class arbitration waivers are unconscionable under state law principles. Moreover, as discussed, there is no reason to believe that attorney fee and minimal statutory damages remedies, in cases in which the amount of individual damages are slight, are adequate substitutes for class actions in vindicating consumer rights and deterring misconduct.

### 3. *Green Tree Financial Corp. v. Bazzle*

Discover Bank argues that *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Bazzle*), issued after the filing of the Court of Appeal opinion, supports the position that a state law rule against class arbitration waivers is preempted by the FAA. We disagree.

In *Bazzle*, several customers sued Green Tree Financial Corp. (Green Tree), alleging that the company failed to provide them with a form informing them of their right to name their own lawyer and insurance agent, contrary to South Carolina law. They sought class certification, and Green Tree sought to compel arbitration pursuant to arbitration agreements with the plaintiffs. The trial court both certified a class action and entered an order compelling arbitration. Two class arbitration proceedings were conducted, and in both instances, the arbitrators awarded the class several million dollars in statutory damages. The trial court confirmed the awards. (*Bazzle, supra,* 539 U.S. at pp. 448–449.) Green Tree challenged on appeal, among other things, the legality of the class arbitration. The South Carolina Supreme Court held that the arbitration agreements were silent with respect to classwide arbitration and that, under South Carolina law, silence would be construed to permit such arbitration. (*Id.* at p. 450.)

The *Bazzle* court addressed a narrow question: Green Tree disputed whether the arbitration clause was silent on classwide arbitration, arguing that the contract language in fact prohibited such arbitrations. As the court's plurality framed the issue: "[W]e must deal with that argument at the outset, for if it is right, then the South Carolina court's holding is flawed on its own terms; that court neither said nor implied that it would have authorized class arbitration had the parties' arbitration agreement forbidden it." (*Bazzle, supra,* 539 U.S. at p. 450 (plur. opn. of Breyer, J.).)

Even on this narrow issue, *Bazzle* produced no majority opinion. A plurality of four justices held that the question whether the contract was in fact silent on arbitration was for the arbitrator to decide, and remanded for an arbitral determination. As the plurality stated: "In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary). [Citation.] These limited instances typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide. [Citation.] They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy. [Citations.] [¶] The question here whether the contracts forbid class arbitration does not fall into this narrow exception. It concerns neither

the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." (*Bazzle, supra*, 539 U.S. at p. 452.)

Justice Stevens filed a concurring and dissenting opinion that stated in part: "The Supreme Court of South Carolina has held as a matter of state law that class-action arbitrations are permissible if not prohibited by the applicable arbitration agreement, and that the agreement between these parties is silent on the issue. [Citation.] There is nothing in the Federal Arbitration Act that precludes either of these determinations by the Supreme Court of South Carolina. See *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, [*supra*,] 489 U.S. 468, 475–476.

"Arguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court. [Citation.] Because the decision to conduct a class-action arbitration was correct as a matter of law, and because petitioner has merely challenged the merits of that decision without claiming that it was made by the wrong decisionmaker, there is no need to remand the case to correct that possible error. [¶] Accordingly, I would simply affirm the judgment of the Supreme Court of South Carolina. Were I to adhere to my preferred disposition of the case, however, there would be no controlling judgment of the Court. In order to avoid that outcome, and because JUSTICE BREYER's opinion expresses a view of the case close to my own, I concur in the judgment." (*Bazzle, supra*, 539 U.S. at pp. 455–456 (conc. & dis. opn. of Stevens, J.).)

Chief Justice Rehnquist, writing also for Justices Kennedy and O'Connor, would have held that the question whether the agreement is silent on classwide arbitration is for the court, rather than the arbitrator, to decide. (*Bazzle, supra*, 539 U.S. at pp. 457–458 (dis. opn.).) The dissent viewed the choice of class arbitration as relating to the choice of arbitrator (*Bazzle, supra*, 539 U.S. at p. 456) and concluded that this choice "is as important a component of the agreement to arbitrate as is the choice of what is to be submitted [for arbitration]." (*Id.* at pp. 456–457.) On the merits, the Chief Justice would have decided the contract interpretation in Green Tree's favor, i.e., that the contract forbade class action arbitration and that such waiver is fully enforceable. (*Id.* at pp. 458–459.)

Justice Thomas adhered to his previous view that the FAA does not apply to state court proceedings. (*Bazzle, supra*, 539 U.S. at p. 460 (dis. opn. of Thomas, J.).)

Reading the plurality opinion together with Justice Stevens's opinion, the most that might be derived from *Bazzle* is a narrow holding: that when the question of whether a class action arbitration is available depends on whether

or not the arbitration agreement is silent on the matter or expressly forbids class action arbitration, then it is up to the arbitrator, not the court, to determine whether the arbitration agreement is in fact silent.

More significant than *Bazzle*'s holding, for purposes of the present case, is what it did *not* decide. The court did not address whether a state court can, consistent with the FAA, hold a class action waiver appearing in a contract of adhesion for arbitration unconscionable or contrary to public policy, as part of an arbitration-neutral law that finds all such waivers unenforceable. As noted, the plurality in framing the issue stated "that [the South Carolina Supreme Court] neither said nor implied that it would have authorized class arbitration had the parties' arbitration agreement forbidden it." (*Bazzle, supra*, 539 U.S. at p. 450 (plur. opn. of Breyer, J.).) Under California law, as discussed, class arbitration may be authorized, even when a contract of adhesion forbids it, because a class arbitration waiver may be unconscionable. *Bazzle* does not call into question the principle that state courts may enforce general contract rules regarding unconscionability and public policy that preclude class action waivers.

Nor did the court address the question whether that determination of unconscionability should be made by a court or an arbitrator. The court was in general agreement that courts should be left to decide certain "gateway matters" (*Bazzle, supra*, 539 U.S. at p. 452 (plur. opn. of Breyer, J.)) or "fundamental" matters such as the validity and scope of the arbitration agreement (*id.* at pp. 456–457 (dis. opn. of Rehnquist, C. J.)). Under California law, the question whether "grounds exist for the revocation of the [arbitration] agreement" (Code Civ. Proc., § 1281.2) based on "grounds as exist for the revocation of any contract" (*id.*, § 1281) is for the courts to decide, not an arbitrator. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903].) This includes the determination of whether arbitration agreements or portions thereof are deemed to be unconscionable or contrary to public policy. (See, e.g., *Little, supra*, 29 Cal.4th at p. 1076; *Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1530 [22 Cal.Rptr.3d 441] [question of unconscionability of arbitration agreement a gateway issue to be resolved by the court]; *Miller v. Drexel Burnham Lambert, Inc.* (11th Cir. 1986) 791 F.2d 850, 854; *American General Finance, Inc. v. Branch* (Ala. 2001) 793 So.2d 738, 743; *In re Arbitration Between Teleserve Systems, Inc. & MCI Telecommunications Corp.* (N.Y.App.Div. 1997) 230 A.D.2d 585, 594 [659 N.Y.S.2d 659].) Nothing in *Bazzle* is to the contrary.

Amicus curiae United States Chamber of Commerce argues that the imposition of classwide arbitration undermines the purpose of the FAA by drastically altering the rules by which the parties agreed to arbitrate, transforming arbitration into a less efficient and less desirable mechanism of

dispute resolution. *Bazzle* lends no support to that position. On the contrary, although *Bazzle* could have been disposed of easily if a majority had decided that arbitrations and class actions were inherently incompatible, and that class action arbitration therefore could not be instituted without an express agreement, the court did not take that route. The fact that a majority of the court looked to state law rules to determine whether class arbitration is authorized indicates its view that there is no such incompatibility. The only justice to comment directly on this issue, Justice Stevens, concluded that nothing in the FAA prohibits state courts from authorizing classwide arbitration in agreements silent on the matter. (*Bazzle, supra,* 539 U.S. at pp. 454–455 (conc. opn. of Stevens, J.).)

Nor are we directed to anything concrete that would cause us to reconsider *Keating*'s holding over 20 years ago that classwide arbitrations are workable and appropriate in some cases. (See Sternlight, *As Mandatory Binding Arbitration Meets the Class Action, Will the Class-action Survive?* (2000) 42 Wm. & Mary L.Rev. 1, 38–44 & fns. 148–151 [reporting, based on surveys of court decisions and discussions with attorneys, that class action arbitration is rare but viable, with trial courts acting to resolve class issues and other collateral matters]; see also *Bazzle v. Green Tree Financial Corp.* (2002) 351 S.C. 244 [569 S.E.2d 349, 360–361 & fn. 22] [adopting the California approach to classwide arbitration and affirming its workability]; *Dickler v. Shearson Lehman Hutton, Inc.* (1991) 408 Pa.Super. 286 [596 A.2d 860, 862–863] [adopting classwide arbitration]; American Arb. Assn., Supplementary Rules for Class Arbitrations (Oct. 8, 2003) <http://www.adr.org/sp.asp?id=21936> [as of June 27, 2005] [supplemental rules for classwide arbitration]; JAMS, Class Arbitration Procedures (Feb. 2005) <http://www.jamsadr.com/rules/class_action.asp> [as of June 27, 2005] [same].)

We reiterate what this court said over 20 years ago in *Keating*: "Classwide arbitration, as Sir Winston Churchill said of democracy, must be evaluated, not in relation to some ideal but in relation to its alternatives." (*Keating,* 31 Cal.3d at p. 613.) We continue to believe that the alternatives—either not enforcing arbitration agreements and requiring class action litigation, or allowing arbitration agreements to be used as a means of completely inoculating parties against class liability—are unacceptable. Nothing in the FAA nor in *Bazzle* requires us to reconsider that assessment.[7]

---

[7] Amicus curiae Ralphs Grocery Co. argues that section 5 of the FAA forbids the enforcement of classwide arbitrations not consented-to by the parties. Section 5 provides, in pertinent part: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." (9 U.S.C. § 5.) Amicus curiae contends that the imposition of a class action is inconsistent with the right to choose a method of selecting arbitrators under section 5.

■ It may be the case that arbitration becomes a less desirable forum from Discover Bank's viewpoint if the arbitration must be conducted in a classwide manner. But the fact that a court's refusal to enforce an unconscionable term of an arbitration agreement makes that agreement less desirable to the party imposing the term does not argue in favor of its enforcement.[8]

### D. *Choice-of-law Issue*

Our holding that the FAA does not prohibit a California court from refusing to enforce a class action waiver that is unconscionable does not bring a resolution to this case. The agreement between Discover Bank and plaintiff has a Delaware choice-of-law agreement and Discover Bank argues that under Delaware law, a class arbitration waiver is enforceable. Because the Court of Appeal concluded that any California rule against class arbitrations waivers was preempted by the FAA, it did not address the question whether the Delaware choice-of-law provision requires the enforcement of the class arbitration waiver. It must do so on remand. For the Court of Appeal's guidance on remand, we offer these comments.

■ We have summarized California's choice-of-law provisions[9] as follows: "If the trial court finds that the . . . claims [at issue] fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement). Under that approach, the court must first determine: '(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need

---

We reject Ralphs Grocery Co.'s argument. First, it is unclear whether section 5 applies to state courts. (See *Volt, supra,* 489 U.S. at p. 477, fn. 6; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407, fn. 6 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) We need not resolve the issue here, however. As noted, section 2 of the FAA requires that arbitration agreements be enforced according to their terms. (*Volt, supra,* at p. 478.) Section 5 merely provides a specific application of that general rule for arbitrator selection procedures. As such, reading section 2 and section 5 together, a party's contract providing arbitrator-selection rules will be followed unless those rules are otherwise unenforceable under general rules of contract. As discussed above, a prohibition against class action waivers under some circumstances is one such general rule of contract.

[8] We note both parties agree that, in the event a classwide arbitration is compelled, Discover Bank may waive the arbitration agreement and have the matter brought in court.

[9] Because the Delaware choice-of-law provision appears to apply to itself, we would normally start by reviewing *Delaware* choice-of-law principles. (See *Nedlloyd, supra,* 3 Cal.4th at p. 469, fn. 7.) In the present case, the parties do not discuss Delaware choice-of-law rules nor argue they differ from California rules. The question therefore becomes one of California law. (*Ibid.*)

not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.' " (*Washington Mutual Bank*, *supra*, 24 Cal.4th at pp. 916–917, fns. and italics omitted.)

Assuming that Discover Bank establishes the "substantial relationship" and "reasonable basis" prongs of the choice-of-law analysis, and assuming that Delaware law regarding class arbitration waivers is contrary to California law, the court must then resolve whether and to what extent Delaware law should apply. As reviewed above, in *America Online* the court concluded that a Virginia choice-of-law provision that would have compelled waiver of the plaintiff's right to bring a class action lawsuit under the CLRA would not be enforced against a California resident, concluding that the CLRA class action remedy furthered a "strong public policy of this state." (*America Online*, *supra*, 90 Cal.App.4th at p. 15.) The present case differs from *America Online* in that plaintiff is not invoking the antiwaiver provision of the CLRA, nor is he seeking to enforce an obligation imposed by the CLRA or any other California statute. Instead, he has brought this action under the Delaware Consumer Fraud Act and Delaware contract law, but seeks to enforce those Delaware laws in a California court with a California unconscionability rule against class action waivers that arguably is not found under Delaware law. Whether he may do so remains to be determined on remand. Also to be addressed is plaintiffs' argument that class arbitration rules are procedural rules that California courts are to apply even when the substantive law dictated by contract is from another state (see Rest.2d Conf. of Laws, *supra*, § 122), as well as any other choice-of-law arguments appropriately raised.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed, and the cause is remanded for proceedings consistent with this opinion.

George, C. J., Kennard, J., and Werdegar, J., concurred.

**BAXTER, J.,** Concurring and Dissenting.—I concur in part and dissent in part. I agree with the majority that *federal* law does not *compel* enforcement of contractual class action waivers simply because they are contained in

arbitration agreements. But I lament the majority's determination to use this case as a vehicle to resolve the issue of *California's* policy on class action waivers. For two reasons, we need not, and should not, confront that question here.

First, because the Court of Appeal upheld the instant waiver solely by finding federal preemption of any California antiwaiver policy, that court did not decide whether such a policy exists. Ordinarily, we do not address, on review, issues that were not decided by the Court of Appeal.

Second, the majority's questionable decision to deem the class action waiver in this contract unconscionable by *California* standards—a determination at odds with the vast weight of authority elsewhere (see discussion, *post*)—is simply moot under the particular circumstances. The parties reasonably agreed that *Delaware* law would govern all aspects of their contractual relationship, and plaintiff has asserted only *Delaware* causes of action. Thus, regardless of California's position on class waivers, California has a manifest obligation to evaluate the waiver under Delaware law alone. Because Delaware, like most other jurisdictions, would uphold the waiver, California—the fortuitous venue for this "nationwide" class action—must honor it.

If the majority insists on reaching beyond the issues addressed by the Court of Appeal, it should at least identify and resolve the dispositive one. Instead, the majority, so bold on the waiver issue, avoids deciding the choice-of-law issue. Despite some mild cautionary admonitions, the majority leaves the Court of Appeal free on remand to dishonor the class waiver under California law despite the contrary Delaware rule.

In that event, the parties' reasonable contractual expectations, as well as the strong interest of Delaware itself in the application of its own law to this issue, would be frustrated. Moreover, if California courts must, or may, dishonor class action waivers that are perfectly valid under the governing law selected by the parties themselves, California—which now takes a minority position on this issue—might well become the magnet for countless nationwide consumer class lawsuits that could not be maintained elsewhere. I cannot accept such a result.

I briefly review what I deem the pertinent aspects of this controversy. The cardholder agreement at issue in this case, as modified by Discover Bank in 1999, specifies that either party may choose arbitration, rather than litigation, of a dispute under the contract, and that neither party may obtain class treatment. As plaintiff concedes, the agreement provides that it will be governed, not by the law of California, but by federal law and the law of Delaware.

The choice of Delaware law is hardly startling in view of Discover Bank's Delaware domicile. Indeed, Delaware *requires* that "[a] revolving credit plan

between a [Delaware-chartered] bank and an individual borrower *shall be governed* by the laws of [Delaware]." (Del. Code Ann., tit. 5, § 956, italics added.)

For all but one purpose, plaintiff has embraced the choice of Delaware law. He has expressly and intentionally asserted only Delaware causes of action. At oral argument, his counsel explained that his complaint is so framed in deference to the agreement's choice of law, and also in hopes of certifying a nationwide class subject to uniform legal principles.

But Delaware permits arbitration agreements that preclude class treatment, even if such provisions are contained in standard-form consumer contracts. (E.g., *Edelist v. MBNA America Bank* (Del.Super.Ct. 2001) 790 A.2d 1249, 1261; see also *Lloyd v. MBNA America Bank, N.A.* (D.Del. 2001) 2001 WL 194300; *Pick v. Discover Financial Services, Inc.* (D.Del. 2001) 2001 WL 1180278, *4–*5.)[1] Furthermore, under specific provisions of Delaware statutory law, Discover Bank could insert such a provision in a preexisting contract, as the bank did here, by issuing a unilateral notice, under which plaintiff's inaction or continued use of his credit card constituted acceptance. (Del. Code Ann., tit. 5, § 952.)

---

[1] Delaware's position is in accord with the vast majority of decisions, applying federal law or the law of other states, which hold that arbitration clauses are not invalid either because they specifically exclude class treatment or because they preclude such treatment by failing expressly to provide for it. (E.g., *Livingston v. Associates Finance, Inc.* (7th Cir. 2003) 339 F.3d 553, 559 (*Livingston*) [federal Truth in Lending Act (TILA)]; *Snowden v. Checkpoint Check Cashing* (4th Cir. 2002) 290 F.3d 631, 638–639 (*Snowden*) [same]; *Burden v. Check Into Cash of Kentucky, LLC* (6th Cir. 2001) 267 F.3d 483, 492 (*Burden*) [same]; *Randolph v. Green Tree Financial Corp.-Alabama* (11th Cir. 2001) 244 F.3d 814, 819 (*Randolph*) [same]; *Johnson v. West Suburban Bank* (3d Cir. 2000) 225 F.3d 366, 370–378 (*Johnson*) [same]; *Champ v. Siegel Trading Co., Inc.* (7th Cir. 1995) 55 F.3d 269, 277; *Shales v. Discover Card Services, Inc.* (E.D.La. 2002) 2002 WL 2022596, *2; *Lomax v. Woodmen of the World Life Ins. Society* (N.D.Ga. 2002) 228 F.Supp.2d 1360, 1365; *Vigil v. Sears Nat. Bank* (E.D.La. 2002) 205 F.Supp.2d 566, 572 [applying federal and Arizona law]; *McIntyre v. Household Bank* (N.D.Ill. 2002) 216 F.Supp.2d 719, 724 [TILA]; *Thompson v. Illinois Title Loans, Inc.* (N.D.Ill. 2000) 2000 WL 45493, *4 [same]; *Zawikowski v. Beneficial National Bank* (N.D.Ill. 1999) 1999 WL 35304, *2, & fn. 2 [upholding clauses that compelled arbitration and precluded *class litigation*, but declining to decide if *class arbitration* was proper]; *Med Center Cars, Inc. v. Smith* (Ala. 1998) 727 So.2d 9, 20; *Rains v. Foundation Health Systems* (Colo.Ct.App. 2001) 23 P.3d 1249, 1253–1254; *Brown v. KFC National Management Co.* (1996) 82 Haw. 226 [921 P.2d 146, 166, fn. 23]; *Rosen v. SCIL, LLC* (2003) 343 Ill.App.3d 1075 [799 N.E.2d 488, 494, 278 Ill.Dec. 770] [applying federal arbitration law]; *Walther v. Sovereign Bank* (2005) 386 Md. 412 [872 A.2d 735, 749–751] [federal and Maryland law]; *Strand v. U.S. Bank Nat. Ass'n ND* (2005) 2005 ND 68 [693 N.W.2d 918]; *Gras v. Associates First Capital Corp.* (2001) 346 N.J. Super. 42 [786 A.2d 886, 889–895]; *Ranieri v. Bell Atlantic Mobile* (App.Div. 2003) 304 A.D.2d 353 [759 N.Y.S.2d 448, 449]; *AutoNation USA Corp. v. Leroy* (Tex.App. 2003) 105 S.W.3d 190, 199–200.)

Thus, unwilling to take the bitter with the sweet, plaintiff would now rather apply California law to a single issue governed by the contract. After agreeing to one-on-one arbitration in a contract choosing Delaware law, he now seeks to proceed as a nationwide class representative by persuading California courts, through the application of California law, to dishonor his contractual waiver of class treatment. As the majority itself cogently states the matter, he and his counsel have selected a California forum so that, in an action representing Discover Bank cardholders from all 50 states, he can "enforce . . . Delaware laws . . . [but] with a California unconscionability rule against class action waivers." (Maj. opn., *ante*, at p. 174.)

He should not be allowed to do so. The solution to this case lies in a straightforward application of the choice-of-law test set forth in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*) and *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual*). Under that test, California will apply the law of contractual choice if (1) the chosen state has a substantial relationship to the parties or their transaction or (2) there is any other reasonable basis for the parties' choice of law, unless the chosen state's law offends a "fundamental" California policy. Even where there is a "fundamental" conflict, the chosen state's law will apply unless California has a materially greater interest than the chosen state in resolving the particular issue. (*Washington Mutual, supra,* at pp. 916–917; *Nedlloyd, supra,* at pp. 464–466.) By these standards, plaintiff's effort to apply California class waiver law, to the extent it differs from Delaware's, clearly fails.

The first two considerations favoring application of the chosen state's law are easily satisfied here. Delaware, where Discover Bank is domiciled, has a substantial relationship to the parties and the transaction. Moreover, the choice of Delaware's law as uniformly applicable to Discover Bank's nation-wide credit card business is entirely reasonable. The relationship to Delaware becomes even more substantial, and the choice of its law even more reasonable, by virtue of Delaware's express statutory requirement that its law shall govern.

Furthermore, in the circumstances of this case, the contractual waiver is not so contrary to "fundamental" California policy that California should invali-date it despite contrary Delaware law. The majority suggests the waiver is unconscionable. But unconscionability is simply a matter of contract law—it constitutes a " 'generally applicable contract defense[]' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), quoting *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652]) based on a claim that a particular agreement, or a term thereof, is

unfairly oppressive to one party under the particular circumstances. (See Civ. Code, § 1670.5 [court may decline to enforce unconscionable contract, but only after giving parties opportunity to explain context].) States may, of course, differ in their conception of what constitutes an unconscionable contract term. Thus, what is "unconscionable" in an agreement seems peculiarly an issue to be decided under the law chosen by the parties in the agreement itself.

As noted, these parties chose *Delaware* law to govern and construe their agreement. Even if California, applying its own contract law, might find certain class waivers unconscionable, there is no "fundamental" reason to impose that defense upon an agreement in which the parties, acting reasonably, chose the contract law of a jurisdiction where such a defense would not apply.

The majority also notes that California affords certain substantive rights, particularly those specified by statute, that are "unwaivable." (See, e.g., Civ. Code, §§ 1751, 1781 [unwaivable right to bring class action under Consumers Legal Remedies Act]; see also *Armendariz, supra,* 24 Cal.4th 83, 100–101.) But as the majority is forced to concede, that principle has no application here, where plaintiff himself has carefully avoided invoking any such California statutory right.

The majority suggests that class waivers in standard consumer contracts may violate California's arguably "fundamental" statutory policy against direct or indirect "exculpatory" clauses. (See Civ. Code, § 1668.) In the majority's view, such waivers may have an exculpatory effect because, given the usually modest amount of each cardholder's personal claim against Discover Bank, litigation or arbitration on an individual basis is impractical and uneconomic. The majority posits that because cardholders and their attorneys have no incentive to pursue such claims except by aggregating them with other similar complaints, Discover Bank will escape liability or punishment for its improper practices.

I find this analysis unpersuasive for several reasons. At the outset, I cannot accept the facile premise that lack of a class remedy is equivalent to exculpation of an alleged wrongdoer. Class treatment, in whatever forum, is a relatively recent invention, designed to *encourage* and *facilitate* the resolution of certain kinds of disputes. It may provide valuable procedural leverage to one side. But as we noted in *Washington Mutual, supra,* 24 Cal.4th 906, " '[c]lass actions are provided *only as a means to enforce substantive law.*' " (*Id.,* at p. 918, quoting *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 462 [115 Cal.Rptr. 797, 525 P.2d 701], fn. omitted, italics added.) They must not be confused with the substantive law to be enforced. (*Ibid.*) Even if

the unavailability of class relief makes a plaintiff's pursuit of a particular claim "less convenient" (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 19 [74 L.Ed.2d 765, 103 S.Ct. 927]; see also *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 32 [114 L.Ed.2d 26, 111 S.Ct. 1647]), such claims may nonetheless be pursued on an individual basis.

Moreover, the majority exaggerates the difficulty of pursuing modest claims where class treatment is unavailable and overlooks the many other means by which Discover Bank could be called to account for the mischarges plaintiff alleges. For example:

(1) The cardholder may contact the bank and attempt to resolve the matter informally. Discover Bank's cardholder agreement specifically provides a 60-day period in which to contact the company with billing questions and disputes. Plaintiff's complaint does not state that he pursued this avenue. (Indeed, though the complaint asserts widespread improper billing practices by Discover Bank, it does not allege that the bank has ever mischarged plaintiff himself. Plaintiff admitted in his deposition that he does not know whether Discover Bank has ever done so.)

(2) Pursuant to the agreement, the cardholder may pursue one-on-one arbitration of Delaware state law claims, including those under the Delaware Consumer Fraud Act (Del. Code Ann., tit. 6, § 2511 et seq.). The agreement includes several provisions designed to make the individual arbitration process fair and accessible. Under the agreement's terms, Discover Bank will arbitrate in the federal judicial district where the cardholder resides. Further, the cardholder may obtain an advance of all forum costs and will never pay forum costs exceeding those he or she would have had to pay in court litigation.

(3) For claims under $5,000, the cardholder may proceed in small claims court. (See Code Civ. Proc., § 116.210 et seq.) In the cardholder agreement, Discover Bank promises that it "will not invoke [its] right to arbitrate an individual claim," involving less than $5,000, which is pending only in a small claims court.[2] The only mandatory expense of a small claims action is a modest filing fee plus the actual cost of any mail service by the court clerk. (*Id.*, §§ 116.230, subds. (a), (c), 116.910.) The claim is pled by filling out a standard form. (*Id.*, §§ 116.310, subd. (a), 116.320.) No formal discovery is permitted (*id.*, § 116.310, subd. (b)), and neither party may be represented by

---

[2] The agreement does not eliminate the theoretical possibility that Discover Bank might seek to remove a small claims action to another court, then elect to arbitrate. However, a small claimant can suffer removal to another forum only if the defendant files a counterclaim exceeding the $5,000 small claims jurisdictional limit—an unlikely development in cases like plaintiff's. (Code Civ. Proc., § 116.390.)

a lawyer (*id.*, § 116.530, subd. (a)), though free advisory assistance is available to the claimant (*id.*, § 116.260).

(4) The cardholder may arbitrate, pursuant to the terms of the cardholder agreement, his rights under such federal statutes as TILA. (15 U.S.C. § 1601 et seq.)[4] This statute imposes mandatory disclosure requirements for consumer credit transactions, including those arising on credit card accounts. As to the latter, the statute provides for detailed disclosure of the terms on which credit is being extended, including annual percentage rates, methods of computing outstanding balances, finance charges, grace periods, and late fees. (15 U.S.C. § 1637.) The cardholder, if he or she prevails, may recover actual damages, twice the finance charge imposed in connection with each violative transaction, and attorney fees and costs. (*Id.*, § 1640(a)(1), (2)(A), (3).)

(5) If Discover Bank's conduct violates California's unfair competition statutes (Bus. & Prof. Code, § 17200 et seq.), which broadly prohibit "any unlawful, unfair or fraudulent business act or practice" (*id.*, § 17200), the Attorney General and designated local law enforcement officials (who are not bound by the cardholder agreement) may sue on the People's behalf for injunctive relief and for mandatory civil penalties of up to $2,500 for each violation (*id.*, §§ 17203, 17204, 17206). The amount of a civil penalty shall be calculated in accordance with "any one or more of the relevant circumstances . . . including, but not limited to . . . the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth." (*Id.*, § 17206, subd. (b).)

(6) Finally, in the highly regulated banking and credit industry, other means of sanctioning and remediating illegal conduct are available at the behest of both federal and Delaware law. (See, e.g., 12 U.S.C. § 1818 (b) [Federal Deposit Insurance Corporation may issue cease-and-desist orders and order corrective measures including restitution]; Del. Code Ann., tit. 5, § 121

---

[3] Though the cardholder agreement contains no forum selection clause, and thus does not bar suits in California courts, a question may arise whether, pursuant to the choice-of-*law* provision, the small claims court would be obliged to apply Delaware law to any dispute before it.

[4] As indicated above (see fn. 1, *ante*), federal circuits addressing the issue have uniformly held that claimants must arbitrate TILA claims pursuant to agreement, that arbitration precludes class relief under TILA, that arbitration agreements containing express waivers of class treatment, even for small individual amounts in dispute, are not unconscionable with respect to TILA claims, and that, although TILA contemplates class actions, it includes no "unwaivable" right to class relief. (*Livingston, supra,* 339 F.3d 553, 559; *Snowden, supra,* 290 F.3d 631, 638–639; *Burden, supra,* 267 F.3d 483, 492; *Randolph, supra,* 244 F.3d 814, 819; *Johnson, supra,* 225 F.3d 366, 370–378.)

et seq. [investigative and enforcement powers of Delaware State Banking Commissioner]; Del. Code Ann., tit. 29, § 2504 [investigative and enforcement powers of Delaware Attorney General].)

Under these circumstances, it cannot be said that, by upholding cardholders' contractual waiver of a class remedy under Delaware law, we would effectively absolve Discover Bank of its objectionable conduct. Thus, there is no basis to conclude that enforcement of the class waiver pursuant to the parties' choice of Delaware law would contravene a fundamental California statutory policy against exculpatory agreements.

Finally, even if the application of Delaware law permitting class waivers would violate fundamental California public policy, I conclude that California has no materially greater interest in applying its own policy to this controversy than does Delaware. California is, to be sure, the home of this individual plaintiff, with his modest personal monetary claim, and of *some* of the other similarly situated Discover Bank cardholders, with similarly modest individual claims, he seeks to represent. But to the extent plaintiff proposes to vindicate the rights of a *nationwide* class under *Delaware* consumer protection laws, California has no greater interest than any other jurisdiction, including Delaware, in protecting the interests of its resident class members.

Indeed, California, its courts, and its judicial resources will be *negatively* impacted if, by invoking its own liberal antiwaiver rule in derogation of contrary law chosen by the parties, this state attracts nationwide consumer class litigation of the sort plaintiff seeks to maintain. Such an adverse affect on California detracts further from this state's interest in applying its own law under such circumstances.

Moreover, any factors in California's favor are outweighed by Delaware's far greater concern with the primacy of its own law, both contractual and regulatory, in relations between Discover Bank and its nationwide cardholders. Delaware is Discover Bank's domicile, as well as the source of the substantive law plaintiff expressly seeks to apply. Robert A. Glen, the Delaware State Bank Commissioner, explains in his amicus curiae brief that Delaware has a paramount interest in the economic and business regulation of financial and banking institutions domiciled in that state.

As Discover Bank's domicile, Delaware has a specific regulatory interest in applying its own laws and policies, uniformly and exclusively, to Discover Bank's operations. Delaware thereby seeks to minimize Discover Bank's exposure to the varying and possibly conflicting laws, regulations, and procedures of 49 sister jurisdictions. In particular, Delaware has ample grounds for concern that the terms of the standardized credit agreements

entered by its locally chartered banks, including those terms governing resolution of customer disputes, will have the same meaning no matter where the banks' customers reside.

As Commissioner Glen observes, Delaware also strives, for the benefit of the banks' customers, including their nationwide credit card customers, to promote financial stability, safety, and soundness in such institutions. These interests are substantially affected by the banks' costs of consumer litigation, including their exposure to consumer class actions. In Commissioner Glen's words, "[a]rbitration helps keep the costs of dispute resolution down because it is more efficient, expeditious and economical than litigation. If a bank has to spend substantial sums in connection with litigation and, in particular, class action litigation, that threatens the bank's safety and soundness and forces the bank to increase the costs of operations, all of which redounds to the detriment of the bank and its customers, including customers located in states outside of Delaware."

Delaware has evidenced its concerns, as noted above, by specifically providing that credit card agreements issued by Delaware-chartered banks must be governed by Delaware law. (Del. Code Ann., tit. 5, § 956.) Commissioner Glen explains that "[t]he purpose of this requirement is to ensure the safe and sound operation of Delaware banks by effectuating the uniform construction of credit card agreements issued by [such] banks in accordance with Delaware law, no matter where disputes concerning those agreements might arise."

Because Delaware has a substantial relationship to this controversy, the parties' choice of Delaware law was reasonable, and Delaware's interest in applying its own law—including its acceptance of class waivers—exceeds California's, California must uphold that choice of law. Under Delaware law, the parties' waiver of class treatment of disputes between them is valid, and California courts must enforce it.

Plaintiff suggests that the choice-of-law principles set forth in *Washington Mutual, supra,* 24 Cal.4th 906, and *Nedlloyd, supra,* 3 Cal.4th 459—as derived from section 187 of the Restatement Second of Conflicts of Law (Restatement)—apply to matters of "substantive" law but not of "procedure." The forum state, plaintiff asserts, always has a paramount interest in applying its own procedures.

Assuming without deciding that we confront an issue of "procedure," plaintiff's argument nonetheless lacks merit. As primary support for his position, plaintiff cites Restatement sections 122 and 125. The former section states that the forum "usually applies its own" litigation rules even when the

law of another jurisdiction is applied for other purposes. The latter section declares that the forum's law determines "who may and who must be parties . . . unless the substantial rights and duties of the parties would [thereby] be affected . . . ."[5] (Rest., § 125.)

But Restatement sections 122 and 125, like most of the Restatement, set forth principles for determining which jurisdiction's law to apply "[i]n the absence of an effective choice of law by the parties." (Rest., § 188, subd. (2).) Nothing in those sections, or in the comments thereto, indicates a purpose to supersede Restatement section 187 where the parties have contractually chosen the applicable law, or to impose a forum rule for dispute resolution despite the express contrary provisions of an agreement that specifies the law of a jurisdiction in which that choice is valid.

Indeed, the comments to both these Restatement sections demonstrate their inapplicability here. For example, the comments to section 122 point out that "in matters of judicial administration, it would often be disruptive or difficult for the forum to apply the local law rules of another state [without any repayment] by a furtherance of the values that the application of another state's local law is designed to promote." (Rest., § 122, com. a, p. 350.)

Moreover, it is explained, "[p]arties do not usually give thought to matters of judicial administration before they enter into legal transactions. They do not usually place reliance on the applicability of the rules of a particular state to issues that would arise only if litigation should become necessary. Accordingly, the parties have no expectations as to such eventualities, and there is no danger of unfairly disappointing their hopes by applying the forum's rules in such matters." (Rest., § 122, com. a, p. 351.)

Here, the parties gave extensive and detailed contractual consideration to the "issues that would arise . . . if litigation [became] necessary." They specifically agreed that disputes would be resolved, upon either party's election, by mandatory arbitration, and that class treatment of the dispute would not be permitted. Further, they expressly provided that their agreement would be governed by the law of Delaware—a jurisdiction which, for policy reasons of its own, allows contractual provisions requiring nonclass arbitration and further *demands* that credit card agreements issued by Delaware-chartered banks be applied according to that state's law. The reasonable expectations of both Discover Bank and the State of Delaware would thus be

---

[5] Restatement section 122 provides: "A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case." Section 125 provides: "The local law of the forum determines who may and who must be parties to a proceeding unless the substantial rights and duties of the parties would be affected by the determination of this issue."

"unfairly disappointed" if a California rule banning class waivers were applied despite the parties' agreement.

Moreover, by honoring the parties' agreement in this respect, California courts risk no disruption or confusion in matters of judicial administration. There is no need to delve deeply into the procedural rules of another jurisdiction. All that is required is to compel arbitration, and to deny class certification, as the parties agreed.

Similarly, the comments to section 125, like the text of that section itself, make clear that the forum's rules on the identity of parties will not be applied "when [such] application would substantially affect the rights and duties of the parties." (Rest., § 125, com. a, p. 356.) Here, Discover Bank's rights would be substantially affected were it forced into a class proceeding contrary to a specific term of its contract with plaintiff.

Finally, as the majority must concede, neither *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr.2d 862], nor *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 [108 Cal.Rptr.2d 699] (*America Online*) undermines the dispositive effect in this case of Delaware law. In *Szetela*, the Court of Appeal concluded that because choice-of-law issues had not been briefed, they were waived. (*Szetela, supra*, at p. 1099, fn. 3.) *America Online* involved a suit brought under a law of this state, the Consumers Legal Remedies Act, which specifically grants the right to bring a class action and makes the rights granted by the statute unwaivable by contract. (Civ. Code, §§ 1751, 1781, subd. (a).) As noted above, plaintiff in this case bases his claims solely on Delaware substantive law.

If, as the majority hints, California would refuse to enforce the parties' agreement for individual arbitration as Delaware law demands, the legitimate purpose of that agreement—uniform, inexpensive, efficient dispute resolution—will be entirely frustrated. No matter how many other courts, state and federal, would enforce the agreement according to its terms, if California declines to do so, this state will simply become a forum of choice for putative nationwide class suits like this one. It will only be necessary to find a single California cardholder to act as a representative plaintiff, and to sue in a California court. I cannot join the majority's willingness to countenance such a result.

I would hold the parties to their agreement, expressly governed by Delaware law, which calls for individual arbitration of disputes arising between Discover Bank and its cardholders. Accordingly, I would affirm the

judgment of the Court of Appeal, which directed the issuance of a petition for mandate requiring the trial court to (1) compel arbitration of plaintiff's complaint and (2) reinstate the waiver of class treatment.

Chin, J., and Brown, J., concurred.