09-1562-cv
Fensterstock

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2009

(Argued:  November 18, 2009          Decided:  July 12, 2010)

Docket No. 09-1562-cv

_____

JOSHUA  G.  FENSTERSTOCK,  an  individual,  on  his  own behalf and on behalf of all similarly situated,

Plaintiff-Appellee,

- v. -

EDUCATION FINANCE PARTNERS, a California corporation,

Defendant,

AFFILIATED  COMPUTER  SERVICES,  INC.,  a  Delaware Corporation,

Defendant-Appellant.

_____

Before:  KEARSE, CABRANES, and STRAUB, Circuit Judges.

Appeal  by  Affiliated  Computer  Services,  Inc.,  from  an order  of  the  United  States  District  Court  for  the  Southern District of New York, Thomas P. Griesa, Judge, denying its motion to  compel  arbitration,  holding  arbitration  clause  of  promissory note unconscionable under California law because of class-action and  class-arbitration  waiver  provision.   See  618  F.Supp.2d  276 (2009).

Affirmed.

ORIN KURTZ, New York, New York (Karin E. Fisch, Abbey Spanier Rodd & Abrams, New York, New York, Alan E. Sash, McLaughlin & Stern, New York, New York, on the brief), *for Plaintiff-Appellee*.

EDWARD K. LENCI, New York, New York (Hinshaw & Culbertson, New York, New York, on the brief), *for Defendant-Appellant*.

KEARSE, *Circuit Judge*:

Plaintiff Joshua G. Fensterstock commenced this action asserting state-law claims on behalf of himself and others similarly situated, alleging that defendants Education Finance Partners ("EFP") and Affiliated Computer Services, Inc. ("ACS"), have engaged in fraudulent and deceptive practices in connection with the solicitation, consolidation, and servicing of student loans. ACS appeals from an order of the United States District Court for the Southern District of New York, Thomas P. Griesa, *Judge*, denying its motion (which was joined by EFP) to stay the action and compel Fensterstock (a) to submit his claims to arbitration, and (b) to do so on an individual basis, not a class basis, in accordance with the terms of his loan agreement with EFP. The district court denied defendants' motion on the ground that, under California law, the arbitration clause of the agreement is unconscionable and therefore unenforceable. On appeal, ACS contends principally that the arbitration clause is not unconscionable under California law, or that if it is, then California law is preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, under which the clause is not

- 2 -

unconscionable. For the reasons that follow, we disagree and affirm the order of the district court.

I. BACKGROUND

The factual assertions in the complaint and in the submissions with respect to the motion to compel arbitration, accepted as true for the purposes of this appeal, show the following. Fensterstock is an attorney who graduated from law school in 2003 and was admitted to practice law in New York State in 2004. EFP, a California corporation headquartered in California, specializes in private student loans and is the holder of Fensterstock's consolidated loan. ACS is a corporation that services loans for EFP.

A. Fensterstock's Loan and the Allocation of His Payments

In mid-2006, Fensterstock responded to a solicitation from EFP offering to consolidate his student loans in a single loan. Fensterstock executed an EFP "Private Consolidation Loan Application and Promissory Note" (the "Note"), and he received a loan in the principal amount of $52,915.49 at a fixed rate of interest equal to 9.32% per annum. The Note, defining "you" and "your" to "mean Union Bank of California, N.A. pursuant to agreements with Education Finance Partners, Inc., and assigns," and defining "I" and "me" as the borrower (Note, Terms and Conditions Statement at 1), provided, _inter alia_, that "[t]his

- 3 -

Note will be deemed to have been made in California, and your decision on whether to lend me money will be made in California" and that "the provisions of this Note will be governed by Federal laws and the laws of the State of California, without regard to conflict of laws rules" (id. at 3).

Fensterstock's repayment period began on October 14, 2006; he was to repay the loan over a period of approximately 29 years, with 348 monthly payments of $440.74, each due on the 14th of the month, for a total of $153,377.52 including interest (see Complaint ¶ 29), plus one final payment of $335 (see id. ¶¶ 3, 36) due on October 14, 2035. The Note stated that payments would "be applied first to charges, costs and fees, next to unpaid interest, and then to Principal." (Note, Terms and Conditions Statement at 3.)

Beginning October 14, 2006, Fensterstock made timely payments on the loan; he was not subject to any charges, costs, or fees. Through December 2007, he had paid a total of $7,051.84. According to what Fensterstock refers to as "[t]he Amortization Schedule" (e.g., Complaint ¶ 32), a total of $476.58 of that amount should have been applied to reduce the loan's unpaid principal (see id.). After learning that only $213.39 had been applied to principal (see id.), Fensterstock inquired of ACS and was informed that when his payment was received prior to the 14th day of the month in which it was due, his entire payment was treated as a payment of interest only (see id. ¶¶ 2, 57).

B. **The Complaint and the Motion To Compel Arbitration**

In April 2008, Fensterstock commenced the present action on behalf of himself and others similarly situated, asserting claims under California law (a) against EFP and ACS for breach of contract, fraud, and unfair business practices, and (b) against EFP for false and deceptive advertising practices. The complaint alleges that EFP engaged in a scheme of deception by intentionally failing to disclose to borrowers that unless their payments were received on the precise day of the month on which they were due, EFP and ACS would alter the Amortization Schedule's prescribed apportionment of the payment between interest and principal, "divert[ing] the entire payment to themselves as interest" and thereby "prevent[ing] borrowers from paying off the principal of their loans." (Complaint ¶ 2.) The complaint alleges that, through December 2007, the amount of Fensterstock's payments that had been misallocated to interest totaled $263.19, and that if misallocations (referred to by Fensterstock as the "hidden penalty" or the "Amortization Penalty" (e.g., id. ¶ 2 et seq.)) continued at that rate, Fensterstock would "be required to make an enormous lump-sum payment" at the end of his repayment period, "amount[ing] to thousands of dollars, not $335.00 as stated in the Note." (Id. ¶ 36.) Premising subject matter jurisdiction on class action diversity of citizenship, see 28 U.S.C. § 1332(d), the complaint alleges that the value of the aggregate claims of all class members will exceed $5 million. (See Complaint ¶ 4.)

The complaint alleges that the case should be certified as a class action because, _inter alia_, the class is so numerous that joinder of all members is impracticable and the relatively small amount of damages suffered by each class member may make it economically impractical for class members to prosecute individual actions. (See _id._ ¶¶ 10, 15.) The complaint also alleges that although the Note contains an arbitration clause stating that "'[c]laims made as part of a class action or other representative action [are subject to arbitration], and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis'" (_id._ ¶ 39 (quoting Note, Terms and Conditions Statement at 4) (alterations in Complaint)), the clause is part of a contract of adhesion and should be declared void as against public policy (see, _e.g._, Complaint ¶¶ 40-43).

ACS, subsequently joined by EFP, moved for an order staying the action and compelling Fensterstock to submit his claims to arbitration and to pursue them on an individual, rather than a class, basis. It attached to its motion, _inter alia_, a copy of the Note, whose arbitration clause begins as follows:

> ARBITRATION OF DISPUTES. PLEASE READ THIS ARBITRATION PROVISION CAREFULLY. IT PROVIDES THAT EITHER YOU OR I CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.

(Note, Terms and Conditions Statement at 3.) To the extent pertinent here, the clause goes on to provide as follows:

> **Agreement to arbitrate:** You and I agree that either you or I may, without the other's consent, require that any Claims between you and me be submitted to mandatory, binding arbitration except for certain matters excluded below. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this transaction.
>
> **Claims subject to Arbitration include, but are not limited to:**
>
> . . . .
>
> * Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual (non-class, non-representative) basis. If you or I require arbitration of a particular Claim, neither you, me [sic], nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise.
>
> . . . .
>
> **Severability, survival:**
> . . . . If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

(Id. at 3-4.) Defendants contended that, in light of these provisions, the FAA required the court to stay the action and compel Fensterstock to submit his claims, individually, rather than on a class basis, to arbitration.

Defendants disputed the complaint's allegations that the Note was a contract of adhesion whose terms Fensterstock had "had no meaningful choice" (Complaint ¶ 41) but to accept, and disputed his contention that the arbitration clause is unconscionable and against public policy. They pointed out,

- 7 -

inter alia, that when Fensterstock entered into the loan agreement he was a practicing lawyer seeking to consolidate his existing loans, not a student whose education might be interrupted absent a loan. They also argued that Fensterstock was an unusually sophisticated borrower, submitting as evidence, inter alia, a June 2, 2008 printout of the description of Fensterstock on the internet website of the law firm with which he was associated, which stated as follows:

> Joshua G. Fensterstock practices primarily in the area of real estate law; including, negotiating contracts, drafting commercial leases, and representing clients at closings of purchases and sales of residential and commercial properties. Joshua is also involved in the firm's corporate practice.

> Before joining Isaacs & Associates, Joshua was employed as an associate at a firm where he represented lenders at the closings of purchases of residential and commercial properties. Prior to his work in the private sector, Joshua served as counsel to the Nassau County Comptroller.

> . . . . Joshua was admitted to practice law in New York (2d Dep't) in 2004 and received his B.S. magna cum laude from the State University of New York at Albany in 1999, where he majored in business administration.

(Declaration of Edward K. Lenci dated June 5, 2008, Exhibit D; see also id. (June 2, 2008 printout of Fensterstock's description of himself on the LinkedIn website, stating that his "[s]pecialties" include "diverse financing transactions including bridge loans, revolving credit facilities, sale-leasebacks, and leasehold mortgage loans").)

Fensterstock opposed the motions, arguing principally that the arbitration clause is unconscionable. He also contended that

- 8 -

ACS lacked standing to seek arbitration because it was not a party to the Note. ACS, in response, argued that the nature of Fensterstock's claims against ACS--including breach of the contract between Fensterstock and EFP--estopped him from making the standing argument.

C.   The Decision of the District Court

In an Opinion dated March 24, 2009, reported at 618 F.Supp.2d 276, the district court denied defendants' motions to stay the action and compel arbitration. The court noted that although the FAA generally requires the court to stay a pending federal action in order to enforce an arbitration agreement between the parties, that requirement does not apply if the agreement to arbitrate is unenforceable on grounds such as fraud, duress, or unconscionability. See 618 F.Supp.2d at 278. Applying California law to the question of enforceability, the district court noted that the Supreme Court of California had

> held that when an arbitration clause requires a consumer to waive the right to bring claims on behalf of a class, that waiver is unconscionable if (1) the waiver is found in a consumer contract of adhesion, (2) in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and (3) it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. Under such circumstances, the waiver is both procedurally and substantively unconscionable. It is procedurally unconscionable because it is found in a contract of adhesion, in which the party with superior bargaining power drafts[] the contract and requires the [other] party to either accept or reject the contract in full. . . . It is substantively unconscionable because such waivers "are indisputably

- 9 -

> one-sided" because they operate to insulate a potential defendant from liability since any one plaintiff's damages will usually be too small to justify bringing an individual claim.

_Id_. at 279 (quoting and citing _Discover Bank v. Superior Court_, 36 Cal. 4th 148, 161-63, 113 P.3d 1100, 1108-10 (2005)). The district court found that the Note in the present case met all of those criteria. The district court rejected defendants' contention that the Note's arbitration clause could not be found unconscionable given Fensterstock's sophistication, stating that although California courts had

> occasionally declined to find procedural unconscionability in contracts of adhesion based on the sophistication of a party and the availability of alternative contracts "free of the terms claimed to be unconscionable,"

618 F.Supp.2d at 279 (quoting _Dean Witter Reynolds, Inc. v. Superior Court_, 211 Cal. App. 3d 758, 772, 259 Cal. Rptr. 789, 798 (1st Dist. 1989)), "'the sophistication of a party, alone, cannot defeat a procedural unconscionability claim,'" 618 F.Supp.2d at 279-80 (quoting _Nagrampa v. MailCoups, Inc._, 469 F.3d 1257, 1283 (9th Cir. 2006) (en banc)). The district court stated that defendants had made "no showing here that plaintiff could have obtained a consolidation loan that did not contain a similar class action arbitration provision," 618 F.Supp.2d at 279. The court also rejected defendants' contention that the damages suffered by individual class members would be sufficiently large to justify pursuit of their claims individually. _See id_. at 280.

Having found the arbitration clause unconscionable, the

district court saw no need to reach the question of whether ACS had standing to compel arbitration.

D.   The Issues on This Appeal

ACS has appealed.  EFP, although it joined ACS's motion in the district court, has not appealed.  Accordingly, there is no longer any contractual challenge to Fensterstock's entitlement to litigate his claims against EFP in the district court--whether asserted against both EFP and ACS or against EFP alone--and to litigate them on a class basis.

ACS principally contends on appeal that the district court erred in concluding that the arbitration clause is unconscionable under California law or, alternatively, in failing to rule that the arbitration clause is not unconscionable under the FAA and that the FAA preempts California law.  Fensterstock, in addition to defending the district court's holdings, contends that ACS lacks standing to compel him to arbitrate his claims against ACS because ACS is not a party to the Note.

Like the district court, we need not reach the issue of standing because, even assuming that ACS has standing, we conclude for the reasons that follow that the class arbitration waiver is unconscionable and unenforceable under California law according to principles that are applicable to contracts generally, and that California law is therefore not preempted by the FAA.

## II.  DISCUSSION

A.  <u>The FAA and the Enforceability of Arbitration Agreements</u>

To the extent pertinent to this appeal, § 2 of the FAA provides, in essence, that in any contract evidencing a transaction involving interstate commerce, a written provision agreeing to submit to arbitration a controversy arising out of the contract or transaction "shall be valid, irrevocable, and enforceable, <u>save upon such grounds as exist at law or in equity for the revocation of any contract</u>."  9 U.S.C. § 2 (emphasis added).  FAA §§ 3 and 4 provide generally that if an action is brought in federal court on an issue that is referable to arbitration under such an agreement, the court, upon a timely motion by a proper party, is to stay the action until completion of arbitration in accordance with the terms of the agreement, <u>see</u> <u>id</u>. § 3, and is to order that "arbitration proceed in the manner provided for in such agreement," <u>id</u>. § 4.  <u>See generally</u> <u>Stolt-Nielsen S.A. v. AnimalFeeds International Corp.</u>, 130 S. Ct. 1758, 1773-75 (2010) ("<u>Stolt-Nielsen</u>").  Congress' purpose in enacting the FAA "was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts."  <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24 (1991); <u>see</u>, <u>e.g.</u>, <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University</u>, 489 U.S. 468, 478-79 (1989) ("<u>Volt</u>"); <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 12-16 (1984).

"[T]he interpretation of an arbitration agreement is generally a matter of state law," Stolt-Nielsen, 130 S. Ct. at 1773, and the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration," Volt, 489 U.S. at 477. However,

> even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law--that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Id. (internal quotation marks omitted). Section 2 precludes state laws--"'whether of legislative or judicial origin'"--that invalidate arbitration provisions on any basis that is "applicable only to arbitration provisions." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 685, 687 (1996) ("Doctor's Associates") (quoting Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (emphasis in Doctor's Associates)). But "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Associates, 517 U.S. at 687 (emphases added).


B.  Applicable Principles of California Law

   1.  Arbitration Agreements and Agreements in General

Under California law (see Note, Terms and Conditions at 3 ("the provisions of this Note will be governed by Federal laws and the laws of the State of California, without regard to conflict of laws rules")), contracts that are exculpatory may be

unconscionable and unenforceable. The California Civil Code provides as follows:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Cal. Civ. Code § 1668 (West 1985) (emphases added).

This principle is often a consideration in "the justifications for class action lawsuits." Discover Bank v. Superior Court, 36 Cal. 4th 148, 156, 113 P.3d 1100, 1105 (2005) ("Discover Bank").

> Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, . . . .

Id. (internal quotation marks omitted) (emphasis added). "A company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation." Id. (internal quotation marks omitted); see, e.g., Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997).

Discover Bank involved a class action brought by a credit card holder alleging that the issuer, Discover Bank (or the "Bank"),

had a practice of representing to cardholders that late payment fees would not be assessed if payment was received by a certain date, whereas in actuality they were assessed if payment was received after 1:00 p.m. on that date, thereby leading to damages that were small as to individual consumers but large in the aggregate.

36 Cal. 4th at 152, 113 P.3d at 1103. The applicable credit card agreement provided, inter alia, that either the cardholder or the Bank could elect arbitration; that in the event of such an election, neither side would have the right to litigate the dispute in court; and that neither could conduct arbitration as a member or representative of a class. See id. at 153-54, 113 P.3d at 1103. The trial-level court initially, applying Delaware law, granted a motion by the Bank to compel arbitration on an individual basis. Upon reconsideration following the decision in Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (4th Dist. 2002) ("Szetela") (finding a virtually identical arbitration provision unconscionable under California law), cert. denied, 537 U.S. 1226 (2003), the court held the class action waiver clause unenforceable; it concluded that the plaintiff was required to submit to arbitration but that he could seek to do so on a class basis. On appeal by the Bank, the court of appeal did not rule on unconscionability but held that the California rule that class arbitration waivers are sometimes unconscionable was preempted by the FAA. See generally Discover Bank, 36 Cal. 4th at 155, 113 P.3d at 1104-05.

The California Supreme Court reversed the preemption ruling, noting, inter alia, that

- 15 -

at least under some circumstances, the law in California is that <u>class action</u> waivers in consumer contracts of adhesion are unenforceable, <u>whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration</u>.

<u>Id</u>. at 153, 113 P.3d at 1103 (emphases added). Pointing out that under FAA § 2 "a state court may refuse to enforce an arbitration agreement based on generally applicable contract defenses, such as fraud, duress, or unconscionability," <u>id</u>. at 165, 113 P.3d at 1111-12 (internal quotation marks omitted), the <u>Discover Bank</u> Court noted that "California law, like federal law, favors enforcement of valid arbitration agreements," <u>id</u>. at 163, 113 P.3d at 1110 (internal quotation marks omitted); but California law abhors contracts that are unconscionable, whether or not they involve arbitration. The Court concluded that the FAA did not preempt the California principle that unconscionable arbitration waiver clauses are unenforceable because

the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory <u>is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally</u>. In other words, <u>it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements</u>.

<u>Id</u>. at 165-66, 113 P.3d at 1112 (emphases added).

Accordingly, since California law "place[s] arbitration agreements with class action waivers on the <u>exact same footing</u> as contracts that bar class action litigation outside the context of arbitration," <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 498 F.3d 976, 990 (9th Cir. 2007) ("<u>Shroyer</u>") (emphasis in original),

- 16 -

we reject ACS's contention that the FAA preempts California principles as to the conscionability of class arbitration waivers.

2. Unconscionability Under California Law

We turn next to the standard by which courts determine, under California law, whether a contract clause is unconscionable. As described in Discover Bank, the California doctrine of unconscionability "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Discover Bank, 36 Cal. 4th at 160, 113 P.3d at 1108 (internal quotation marks omitted). "The component of surprise arises when the challenged terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Nyulassy v. Lockheed Martin Corp., 120 Cal. App. 4th 1267, 1281, 16 Cal. Rptr. 3d 296, 306 (6th Dist. 2004) (internal quotation marks omitted). However, "surprise need not be shown" "[w]here an adhesive contract is oppressive." Id. (internal quotation marks omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice . . . ." Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) ("Nagrampa") (internal quotation marks omitted); see, e.g., Szetela, 97 Cal. App. 4th at 1100, 118 Cal. Rptr. 2d at 867 (a clause is oppressive "[w]hen the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation").

> The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.

Discover Bank, 36 Cal. 4th at 160, 113 P.3d at 1108 (internal quotation marks omitted). "Under California law, [a] contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." Shroyer, 498 F.3d at 983 (internal quotation marks omitted). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced . . . , contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.'" Gentry v. Superior Court, 42 Cal. 4th 443, 469, 165 P.3d 556, 573 (2007) ("Gentry") (quoting Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 818, 623 P.2d 165, 171 (1981)), cert. denied, 128 S. Ct. 1743 (2008). The fact that alternative contracts were potentially available does not mean that the contract is not one of adhesion. See, e.g., Szetela, 97 Cal. App. 4th at 1100, 118 Cal. Rptr. 2d at 867 ("[A] contract might be adhesive even if the weaker party could reject the terms and go elsewhere.") (internal quotation marks omitted).

"Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." Discover Bank, 36 Cal. 4th at 160, 113 P.3d at 1108 (internal quotation marks omitted). These include terms that are superficially even-handed. For example, although the arbitration

- 18 -

clause in Discover Bank precluded the Bank, as well as the cardholder, from participating in classwide arbitration or pursuing claims in a representative capacity, the Court noted that

> such class action or arbitration waivers are indisputably one-sided. Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover [Bank], because credit card companies typically do not sue their customers in class action lawsuits. . . . Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable.

Id. at 161, 113 P.3d at 1109 (internal quotation marks omitted); see also Cohen v. DirecTV, Inc., 142 Cal. App. 4th 1442, 1455, 48 Cal. Rptr. 3d 813, 823 (2d Dist. 2006) (a "class action waiver is indisputably one-sided" if the more powerful party "would have no occasion to use the class action device in disputes with its customers") (internal quotation marks omitted).

Although the California courts inquire into both procedural unconscionability and substantive unconscionability, the two aspects

> need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." (15 Williston on Contracts (3d ed. 1972) § 1763A, pp. 226-227 . . . . .) In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

- 19 -

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114, 6 P.3d 669, 690 (2000) ("*Armendariz*") (emphasis added); *see*, *e.g.*, *Gentry*, 42 Cal. 4th at 469, 165 P.2d at 572 (same); *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768, 259 Cal. Rptr. 789, 795 (1st Dist. 1989) ("*Dean Witter Reynolds*") ("Presumably both procedural and substantive unconscionability must be present before a contract will be held unenforceable. However, a relatively larger degree of one will compensate for a relatively smaller degree of the other.").

In *Dean Witter Reynolds*, which involved a class action waiver provision invoked against a challenge to the legality of a $50 account-termination fee charged by a brokerage firm for self-directed individual retirement accounts, the firm "concede[d] for purposes of argument that some measure of substantive unconscionability might be present, i.e., that the challenged fees might be 'too high,'" 211 Cal. App. 3d at 768, 259 Cal. Rptr. at 795. But the court concluded that the class action waiver was enforceable because there was no procedural unconscionability, stating that "the 'oppression' factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." *Id*. at 772, 259 Cal. Rptr. at 798. Stating that "[w]e do not hold or suggest . . . that *any* showing of competition in the market place as to the desired goods and services defeats, as a matter of law, *any* claim

- 20 -

of unconscionability," id., 259 Cal. Rptr. at 797-98 (emphases in original), the court ruled that procedural unconscionability had not been shown in the case before it, given that the plaintiff was a self-described "sophisticated investor," was an attorney who "specializ[ed] in class action litigation involving financial institutions," id., 259 Cal. Rptr. at 798, and had known of, but consciously declined to explore, potential alternatives, see id. at 762, 259 Cal. Rptr. at 791.

Taking account of its Dean Witter Reynolds decision nearly two decades later, the court in Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th 571, 585, 61 Cal. Rptr. 3d 344, 355-56 (1st Dist. 2007) ("Gatton"), cert. denied, 128 S. Ct. 2501 (2008), declined to rule that a finding of procedural unconscionability was precluded simply by the availability of alternatives. The Gatton court acknowledged that

> [w]here the plaintiff is highly sophisticated and the challenged provision does not undermine important public policies, a court might be justified in denying an unconscionability claim for lack of procedural unconscionability even where the provision is within a contract of adhesion.

152 Cal. App. 4th at 585 n.8, 61 Cal. Rptr. 3d at 355 n.8 (emphases added). But it noted that

> there are provisions so unfair or contrary to public policy that the law will not allow them to be imposed in a contract of adhesion, even if theoretically the consumer had an opportunity to discover and use an alternate provider for the good or service involved.

Id. at 585, 61 Cal. Rptr. 3d at 355. The Gatton court concluded that

- 21 -

> absent unusual circumstances, <u>use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives</u>. If the challenged provision does not have a high degree of substantive unconscionability, it should be enforced. But . . . <u>courts are not obligated to enforce highly unfair provisions that undermine important public policies simply because there is some degree of consumer choice in the market</u>.

<u>Id.</u>, 61 Cal. Rptr. 3d at 355-56 (footnote omitted) (emphases added). In the face of such highly unfair provisions, "[t]he adhesive nature of the contract alone justifies scrutiny of the substantive fairness of the contractual terms." <u>Id</u>. at 586 n.9, 61 Cal. Rptr. 3d at 356 n.9. In sum,

> [b]ecause California courts employ a sliding scale in analyzing whether the entire arbitration provision is unconscionable, <u>even if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale and render the arbitration provision unconscionable</u>.

<u>Nagrampa</u>, 469 F.3d at 1281 (emphasis added); <u>see</u>, <u>e.g.</u>, <u>Armendariz</u>, 24 Cal. 4th at 114, 6 P.3d at 690.

In <u>Discover Bank</u>, the Court noted that "[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses," 36 Cal. 4th at 161, 113 P.3d at 1108, and that "not . . . all class action waivers are necessarily unconscionable," <u>id</u>. at 162, 113 P.3d at 1110.

> But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, <u>and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money</u>, <u>then</u>, at least to the extent the obligation at issue is governed by California law, <u>the waiver becomes in practice the exemption of the party "from</u>

*responsibility for [its] own fraud, or willful injury to the person or property of another.*" (Civ.Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

36 Cal. 4th at 162-63, 113 P.3d at 1110 (emphases added). A provider's insistence on an arbitration provision that gives it the opportunity to overcharge its customers by small amounts while denying the customers any effective way to recover "violates fundamental notions of fairness" and "is not only substantively unconscionable, it violates public policy by granting [the provider] a 'get out of jail free' card while compromising important consumer rights." Id. at 160, 113 P.3d at 1108 (other internal quotation marks omitted). "The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored." Id. (other internal quotation marks omitted).

Summarizing Discover Bank and subsequent California appellate decisions interpreting it, the Ninth Circuit in Shroyer has discerned a standard

> three-part inquiry in order to determine whether a class action waiver in a consumer contract is unconscionable. . . . Under this three-part inquiry, courts are required to determine: (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power; (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

Shroyer, 498 F.3d at 983 (internal quotation marks omitted). For the reasons that follow, we conclude that the answers to these three inquiries here lead to a conclusion of unconscionability.

### 3. The Note in the Present Case

In the present case, ACS contends that a ruling that the Note is unconscionable under California law is precluded by the facts that

> 1) [Fensterstock] was an attorney who specialized in complex financial transactions when he entered the Note; 2) he has not alleged that there were no loans on the market that did not include a class arbitration waiver; 3) he claims "enormous" damages of "thousands of dollars"; and 4) he has not alleged that he, an attorney, was surprised by the class arbitration waiver of the Note he signed.

(ACS brief on appeal at 12-13; see, e.g., id. at 19-25.) Most of these proposed rationales are foreclosed by the authorities discussed in Part II.B.2. above.

It is true that Fensterstock has not alleged that he was "surprised" by the class arbitration waiver clause in the Note; and one would surely expect that, as a practicing attorney, he would, before signing, have read the Note's five pages of terms and conditions, including the arbitration provision, the first paragraph of which was printed entirely in capital letters. But, as discussed above, where the clause is oppressive, procedural unconscionability may exist even in the absence of surprise.

Nor, under California law as it has evolved in the past two decades, is a lack of procedural unconscionability established by Fensterstock's failure to allege that there were no alternative

- 24 -

sources for consolidation loans that did not contain class arbitration waiver clauses. Even if Fensterstock could have obtained a consolidation loan elsewhere, he has asserted that he had no meaningful opportunity to negotiate with EFP terms different from those appearing in its preprinted form comprising the loan application and the Note's Terms and Conditions Statement, and that those terms were presented, by a party that had "superior bargaining power," on a "'take it or leave it'" basis (Complaint ¶ 41). ACS does not dispute that characterization of the parties' relative bargaining power; nor does it dispute the assertion that the waiving of class arbitration or class action was not subject to negotiation. And such a clause presented to the weaker party on a take-it-or-leave-it basis without the opportunity for meaningful negotiation is, under California law, oppressive, and hence satisfies the requirement that there be at least a minimal showing of procedural unconscionability.

ACS's argument, relying on <u>Dean Witter Reynolds</u>, that the Note cannot be considered procedurally unconscionable because Fensterstock was "legally sophisticated" (ACS brief on appeal at 21) is unpersuasive. At the time he applied to EFP for the consolidation loan, Fensterstock was just three years out of law school. And although the expertise he had gained through representing clients in financial transactions may show that he was well aware of the presence of the Note's class action and class arbitration waiver clause, we have seen nothing in his

- 25 -

education, experience, or expertise to suggest that he had any meaningful opportunity to negotiate that clause out of the contract.

Finally, ACS's argument that Fensterstock claims "'enormous'" damages of "'thousands of dollars'" (ACS brief on appeal at 13; see Complaint ¶ 36) is an effort to escape the thrust of the California cases that consistently find it substantively unconscionable--and intolerable as a matter of public policy--to permit a party with superior bargaining power to use class action or class arbitration waiver clauses to insulate itself from remedial action when it is alleged to have "deliberately cheat[ed] large numbers of consumers out of individually small sums of money," Discover Bank, 36 Cal. 4th at 163, 113 P.3d at 1110. ACS argues that the district court misapplied Discover Bank because Fensterstock has alleged damages that are not small but enormous. We disagree.

What Fensterstock characterizes as "enormous" is not his present loss but rather the "lump-sum payment" that will be required of him "[a]t the end of the repayment period"--i.e., a quarter of a century from now--as it will amount to "thousands of dollars" instead of "$335.00 as stated in the Note" (Complaint ¶ 36 (emphases added)). These assertions as to the total monetary impact at the end of Fensterstock's 29-year loan period do not remove his claim from the category of cases in which the relatively small amount of damages suffered by customers individually makes it economically impractical for them to

prosecute individual actions. The complaint clearly indicates that from Fensterstock's first 16 payments a total of $263.19 had been misallocated--an average of less than $17 a month. Borrowers aware of the alleged misallocations early in their respective loan repayment periods could not be expected to bring suit individually with respect to such small sums.

ACS has estimated, based on Fensterstock's allegation that the challenged practice cost him $263.19 in connection with his first 16 payments, that over the life of his 29-year the loan, Fensterstock's damages would total some $6,300. This calculation of future damages is largely speculative, as a borrower might, by design or fortuity, have a greater proportion of his payments arrive precisely on their respective due dates, thereby avoiding the alleged misallocations to interest; or a borrower could elect to pay off the entirety of the loan early. Even assuming no such changes and no change in ACS's alleged misallocations, however, ACS's $6,300 figure is misleading because it suggests that the value of the claim asserted by Fensterstock includes losses that have not yet occurred. Moreover, even if we could attach a value to Fensterstock's right to avoid future losses (i.e., the approximate value of an injunction) the present value of that right is much less than the total loss that Fensterstock will eventually suffer over 29 years.

Further, given statute-of-limitations considerations, it seems unlikely that a borrower could wait until the end of his repayment period, allowing the total of misallocated payments to

grow, and successfully sue with respect to the totality of the sums misallocated. For example, a fraud claim accrues upon the victim's discovery of the fraud, see Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 436-37, 159 P.2d 958, 971-72 (1945), and Fensterstock's complaint suggests that the alleged misallocations may be discoverable by borrowers from the monthly statements sent to them by ACS (see Complaint ¶ 30 ("[e]ach month, [Fensterstock] receives a statement summarizing his most recent payment"); id. ¶ 32 (such a statement shows how much of Fensterstock's "payments ha[s] been applied to interest" and how much "has been applied to principal")). And contract claims might be deemed subject to "the doctrine of contractual severability." Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1388, 11 Cal. Rptr. 3d 412, 423 (5th Dist. 2004); see id., 11 Cal. Rptr. 3d at 422 ("where performance of contractual obligations is severed into intervals, . . . an action attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due"). Thus, we see no validity in any suggestion that the sum recoverable by an individual victim of the alleged misallocations would be enormous.

In sum, the California three-part test is met on the record in the present case. The Note is a standardized consumer contract of adhesion drafted by a party that had superior bargaining power; the disputes as to the allocation of monthly loan payments between principal and interest predictably involve small amounts of damages; and it is alleged that EFP and ACS are

deliberately carrying out a scheme to cheat large numbers of borrowers out of individually small sums of money. We conclude that the district court properly ruled that the Note's class action and class arbitration waiver clause is unconscionable.

C. Severability

As indicated in Part I.B. above, the Note contains a severability provision stating that "[i]f any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force." (Note, Terms and Conditions Statement at 4.) In light of that clause, counsel for ACS stated at the oral argument of this appeal that

> if the court decides that the class arbitration waiver is unconscionable, our position is that it could be excised from the arbitration agreement overall, and the case could be referred to arbitration.

Despite our receipt of postargument letters from ACS, it is not entirely clear whether its position on this question has changed in light of the Supreme Court's recent decision in Stolt-Nielsen. However, we read that decision to foreclose an order compelling arbitration on a classwide basis in this case.

The Stolt-Nielsen Court considered an arbitration clause that was "'silent'" as to whether the arbitration proceedings could be conducted on a class basis, meaning, according to the parties' stipulation, that "'no agreement . . . ha[d] been reached on that issue.'" 130 S. Ct. at 1766. The Court concluded that since there was no agreement on arbitration on a class basis, the

courts had no authority to compel arbitration on that basis. It noted that

> [w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must "give effect to the contractual rights and expectations of the parties." . . . In this endeavor, as with any other contract, the parties' intentions control.

Id. at 1773-74 (quoting Volt, 489 U.S. at 479) (other internal quotation marks omitted). It reiterated that "[a]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration," Stolt-Nielsen, 130 S. Ct. at 1774 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (emphases in Stolt-Nielsen)), and emphasized that the courts "must not lose sight of the purpose of the exercise: to give effect to the intent of the parties," Stolt-Nielsen, 130 S. Ct. at 1774-75 (citing Volt, 489 U.S. at 479). The Court stated that "'[n]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement,'" Stolt-Nielsen, 130 S. Ct. at 1774 (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (emphasis in Stolt-Nielsen)), and hence "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so," Stolt-Nielsen, 130 S. Ct. at 1775 (emphasis in original).

Thus, the FAA embodies a preference not so much for

arbitration as for the enforcement of arbitration agreements, and the <u>Stolt-Nielsen</u> Court concluded that

> consistent with our precedents emphasizing the consensual basis of arbitration, we see the question as being whether the parties <u>agreed to authorize</u> class arbitration. Here, where the parties stipulated that there was "no agreement" on this question, it follows that the parties cannot be compelled to submit their dispute to class arbitration.

<u>Id</u>. at 1776 (emphasis in original).

In the present case, the Note's arbitration clause is not silent but expressly states that "the arbitration of . . . Claims <u>must proceed on an individual (non-class, non-representative) basis</u>." (Note, Terms and Conditions Statement at 4 (emphasis added).) Thus, the parties plainly did not agree that arbitration may be conducted on a classwide basis, and we do not see that an order for classwide arbitration can be premised on the Note's severability provision: Our conclusion that a given agreement is invalid and unenforceable does not mean that the parties in fact reached the opposite agreement. Thus, excising the Note's class action and class arbitration waiver clause leaves the Note silent as to the permissibility of class-based arbitration, and under <u>Stolt-Nielsen</u> we have no authority to order class-based arbitration.

Because the agreement forbidding Fensterstock to pursue his present claims on a classwide basis is unconscionable under California law, and because the parties did not agree that arbitration could proceed on such a basis, we affirm the district

court's denial of ACS's motion to stay the present action and compel arbitration.

                              CONCLUSION

        We have considered all of ACS's arguments on this appeal and, except as indicated above, have found them to be without merit.  The order of the district court is affirmed.